## THE STATE OF KANSAS v. JOE JOHNSON.

### No. 14,247. ( 79 Pac. 732.)

#### SYLLABUS BY THE COURT.

1. ASSAULT—*Information Properly Amended.* An information charging that an assault was made with "knives and clubs" was amended, by permission of the court, before the defendant pleaded, by adding "and an umbrella." *Held,* that such amendment is authorized by section 72 of the code of criminal procedure. (Gen. Stat. 1901, § 5513.)

2. PRACTICE, DISTRICT COURT—*Affidavit for Continuance.* A statement in an affidavit for continuance that due diligence has been used to obtain the evidence is not such a showing as is required by the statute; facts must be shown, and not conclusions stated.

3. ASSAULT—*One Offense Charged.* An information charged that the defendant made an assault upon two named persons "with certain deadly weapons, to wit, large-bladed knives and clubs and an umbrella," with an attempt to kill them. *Held,* that but one offense was thereby charged.

4. ——— *Motions Properly Denied.* An assault committed upon two or more persons at the same time by the same act, with the same intent, constitutes but one crime, and an indictment charging such assault is not subject to a motion to quash because of duplicity, or to a motion separately to state the offenses.

5. ——— *Plea in Abatement Properly Overruled.* A preliminary examination was had upon a warrant charging a felonious assault upon ——— Bert. The information thereafter filed in the district court charged that the assault was made upon Joseph Burt. *Held,* that a plea in abatement because the defendant had had no preliminary examination was properly overruled.

Appeal from Shawnee district court; Z. T. HAZEN, judge. Opinion filed February 11, 1905. Affirmed.

*C. C. Coleman,* attorney-general, and *Otis E. Hungate,* county attorney, for The State.

*Galen Nichols,* for appellant.

The opinion of the court was delivered by

CUNNINGHAM, J.: This is the appeal of Joe Johnson from a judgment of the district court of Shawnee county sentencing him to the penitentiary upon a charge of having committed an assault upon two named persons with deadly weapons with intent to kill. He was charged with two others but tried separately. The material assignments of error will be discussed in their order.

(1) The preliminary examination was had upon a warrant charging that the assault was committed "with certain deadly weapons, to wit, large-bladed knives and clubs." The information filed in the district court used the same terms. When the case was called for trial in the district court the state asked and was given permission to amend the information by adding, after the word "clubs," the words "and an umbrella," so that the information then charged the assault to have been made "with large-bladed knives and clubs and an umbrella." To the making of this amendment the defendant objected, because it would change the substance of the charge made against him. We find ample authority in section 72 of the code of criminal procedure (Gen. Stat. 1901, § 5513) for the making of the amendment, and as it was done before he was called upon to plead it might well have been made even without the permission of the court.

(2) Thereafter the defendant filed his motion for a continuance. This continuance was not asked for the reason that he had been prejudiced by the making of the amendment, but because of the absence of certain witnesses. An affidavit in support of this motion setting out what one of the witnesses would testify to was permitted by the state to be read as the deposi-

tion of that witness.  The motion was denied as to the other witness.  No diligence was shown to have been used to obtain the required testimony.  The affidavit stated that the affiant had "used due diligence to obtain the evidence."  This statement is insufficient.  The statute requires the affidavit to *show* that due diligence has been used.  (Code, § 317 ; Gen. Stat. 1901, § 4765.)  A statement to that effect is not a showing.  The affidavit further showed that the witness had been in the city of Topeka the day before and that affiant had no knowledge or suspicion that she intended to leave the county or state ; that he had hunted for her at her last place of residence and at other places, but had been unable to find her, and was informed she had gone to Kansas City, Mo.  All of this failed to show the required diligence.  Due diligence would have suggested the issuance of a subpœna in proper time.  (*The State v. Barker*, 43 Kan. 262, 23 Pac. 575.)  It does not appear that he had even the promise of the witness to attend the trial. The district court did not abuse its discretion in refusing a continuance upon the showing made.

(3)  Complaint is made of the denial of defendant's motion to quash the information.  The two reasons which were assigned in this motion, and now contended for, are as follows :

"5.  Because said information contains two separate and distinct offenses alleged in one count, to wit : The offense of making an assault with a deadly weapon with intent to kill W. T. Sanford, and the further and separate offense of making an assault with a deadly weapon with intent to kill one Joseph Burt, and these defendants and each of them do not know which offense they may be required to defend against.

"6.  Because said information is bad for duplicity, in that it charges two distinct felonies in one count."

This calls upon us to examine the information, which, omitting the more formal parts, is as follows :

"That Thomas Phillips, Joseph Johnson, and David Brown, at the county of Shawnee, in the state of Kansas aforesaid, and within the jurisdiction of this court, on the —— day of April, 1904, did then and there unlawfully, feloniously, wilfully, on purpose and of their deliberate and premeditated malice aforethought make an assault in and upon W. T. Sanford and Joseph Burt with certain deadly weapons, to wit, large-bladed knives and clubs and an umbrella, which said knives and clubs and an umbrella the said defendants then and there in their hands had and held, with the intent then and there in so doing the said W. T. Sanford and Joseph Burt unlawfully, feloniously, wilfully, on purpose, and of their deliberate and premeditated malice aforethought, to kill and murder.

"And they, the said defendants, Thomas Phillips, Joseph Johnson, and David Brown, with the said knives and clubs and an umbrella, did then and there unlawfully, feloniously, wilfully, on purpose and of their deliberate and premeditated malice aforethought strike, beat, bruise and cut them, the said W. T. Sanford and Joseph Burt, inflicting certain serious and dangerous wounds upon the bodies of the said W. T. Sanford and Joseph Burt, with the intent then and there in so doing the said W. T. Sanford and Joseph Burt unlawfully, feloniously, wilfully, on purpose and of their deliberate and premeditated malice aforethought to kill and murder, contrary to the statutes in such case made and provided and against the peace and dignity of the state of Kansas."

The argument is that two offenses are here charged, to wit, an assault upon Sanford and an assault upon Burt, and our attention is called to section 38 of the crimes act (Gen. Stat. 1901, § 2023), under which the information is drawn, which provides that "every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat

The State v. Johnson.

another, . . . with intent to kill," etc., shall be guilty, and that, inasmuch as the word "another" is therein used, if the crime charged is an assault upon two others, the one so assaulting would be guilty of two crimes instead of one, and should be charged in two counts.

The record before us does not contain the evidence or the instructions of the court; therefore, we are wholly uninformed as to the character of the proof or the theory of the trial. Our attention is confined to the charge made in the information, which is, that with a single intent, to wit, to kill and murder Sanford and Burt, the defendant committed the single act— made an assault upon these men with certain deadly weapons. May not this be true? May not a person entertain at a given time an intent by one felonious act to kill several persons, and in furtherance of that intent employ one act to accomplish it? Might not the defendant here have used a gun or a deadly bomb intending to murder the two named persons, or even more, at the same time? We think it clear that this might have been; but it is urged that, inasmuch as it is charged that the assault was made with "knives, clubs, and an umbrella," in the nature of things the assault must have been made upon one at a time. This does not follow. It is easily conceivable that the position of two might have been such that both could receive a fatal stroke at one time from the named weapons. This view is well sustained by the authorities.

"A battery or murder of two or more persons may be alleged in one count. We have some authority contrary to this, but by reason and the better decisions, certainly if one bullet, or one blow, or one wrongful impulse of any kind, or probably if one transaction, results in the injury or death of two or more persons,

55—70 KAN.

all may be alleged in one count as one offense. Where two, with intent to murder, commit a joint assault, the one with a knife and one with a gun, they may be jointly held in one count. And if a man shoots at two, meaning to kill one, but regardless which, a single count may contain the full accusation.'' (1 Bish. New Crim. Proc. § 437 [5].)

The principle here involved is discussed at length, and a large number of authorities cited, in *The State v. Colgate*, 31 Kan. 511, 3 Pac. 346, 47 Am. Rep. 507.

The appellant directs our attention to a number of Kansas decisions to the effect that two or more offenses may not be joined in one count of an information. This is hornbook law, but does not reach the question here. There were not two offenses charged in the information under consideration. As we have already said, as charged the intent was single and the act but one.

(4) A plea in abatement was filed and overruled. It is claimed that this action was erroneous. It was based on the claim that no preliminary examination had ever been given the defendant. The real reason of the plea, however, is that in the complaint upon which the defendant was arrested and the warrant upon which the preliminary examination was had the charge was that the assault was made upon W. T. Sanford and —— Bert, and the question is whether a preliminary examination for having assaulted —— Bert will sustain an information and warrant a trial thereon for having assaulted Joseph Burt. The appellant claims that while the surnames may be *idem sonans* the omission of the Christian name renders the identity of the person so uncertain as to amount to a misdescription, if not to an entire want of description. We think that the previous decisions of

this court in connection with the provisions of our statute settle the question against this claim.

We are required by section 293 of the code of criminal procedure (Gen. Stat. 1901, § 5731), in a proceeding like this, to "give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." We find by reference to the record showing the proceedings had upon the preliminary examination that Joseph Burt was used as a witness; that no objection was then made to the omission of the Christian name from the complaint or warrant. It seems, therefore, that the defendant was then satisfied to proceed with the investigation of the charge that he had assaulted —— Bert. We are unable to perceive how the defendant could have been anywise prejudiced by the omission of the Christian name or the misspelling of the surname, especially in the absence of any suggestion on his part that the Christian name should be supplied. The main object in giving the name of a party assaulted is so to describe the crime charged that the record of 'the trial may prove a bar to another prosecution. That "Bert" and "Burt" are *idem sonans* cannot be denied. (*Cochran v. Atchison*, 27 Kan. 728; *Rowe v. Palmer*, 29 id. 337; *The State v. Witt*, 34 id. 488, 8 Pac. 769; *The State v. Falk*, 46 id. 498, 26 Pac. 1023; *State Bank v. Kuhnle*, 50 id. 420, 31 Pac. 1057, 34 Am. St. Rep. 129; *Sparks v. Sparks*, 51 id. 195, 32 Pac. 892.)

"Names are said to be *idem sonans* if the attentive ear finds difficulty in distinguishing them when pronounced, or if common or long-continued usage, has by corruption or abbreviation made them identical in pronunciation. Wrongly spelling names which are *idem sonans* is an immaterial variance." (15 A. & E. Encycl. of L., 2d ed., 916.)

The variance in the spelling of the name was entirely immaterial; no difference in the sound can be detected. Nor was the omission of the Christian name such an irregularity as would render nugatory the preliminary examination. The substantial rights of the appellant were not affected thereby. He was content to let the preliminary examination proceed without objection because of this omission. It was held by this court in *The State v. Bailey*, 32 Kan. 83, 89, 3 Pac. 769:

"All that is necessary is that the defendant should be given a fair opportunity to know by a proffered preliminary examination the general character and outline of the offense charged against him; and it is not necessary that all the details and technical averments required in an information should be set forth in the papers used on the preliminary examination. And the defendant should take notice from the evidence introduced by the state on the preliminary examination, as well as from the papers in the case, of the nature and character of the offense charged against him." (See, also, *The State v. Tennison*, 39 Kan. 726, 18 Pac. 948; *The State v. Reedy*, 44 id. 190, 24 Pac. 66; *The State v. Geer*, 48 id. 752, 30 Pac. 236; *The State v. Aldrich*, 50 id. 666, 32 Pac. 408; *The State v. Smith*, 57 id. 673, 47 Pac. 541.)

(5) The appellant further insists that he was entitled to a jury for the trial of his plea in abatement. Generally where questions of fact are involved in the investigation of such a plea a jury trial is a matter of right. Here, however, the appellant in open court said: "We submit this matter on the affidavit and the judicial knowledge which the court takes of the papers and files in the case." It was only after the court had announced that the plea in abatement was overruled that a jury was demanded to try the issue. Further than this, the issue here raised was clearly

one of law and not of fact; in either view the court was justified in refusing to submit the question to a jury.   Finding no error, we affirm the judgment of the court below.

All the Justices concurring.