No. 47,989

STATE OF KANSAS, *Appellee,* v. MARLOWE KING, *Appellant.*

(548 P. 2d 803)

Opinion filed April 10, 1976.

*Michael J. Peterson,* of Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Marlowe King was found guilty of first degree murder, aggravated battery and rape. He appeals from these jury verdicts and the judgment entered thereon. His defense was based on an alibi. He contends the evidence offered by the prosecution

was insufficient to support the verdicts. The defendant was charged with the murder of Billy Walker and with the aggravated battery and rape of Mrs. Walker.

Mrs. Walker testified that she arrived home about 1:00 p. m. on April 13, 1974. As she entered her house she was confronted by two black males, each armed with a shotgun. One advised her that they had a $3,000 contract to kill her and her husband. While waiting for the husband to arrive home the two men ransacked the house. One went upstairs and brought down some ties and a mattress. The mattress was placed on the floor of the den. Mrs. Walker was ordered to disrobe and the defendant held a shotgun on her while his companion raped her. The details of sexual penetration were adequately covered by the witness. When her husband arrived home he was confronted by the two armed men. He struggled with one of them for possession of a shotgun and was shot in the back by the other man. The witness lost consciousness when she saw her husband murdered and when she regained consciousness her throat had been cut and she was bleeding. Her husband lay dead and his throat had also been cut. She stumbled out of the house and fell in the yard. Two ladies saw her fall and called the police. An ambulance arrived and she was taken to a hospital. She recovered from her ordeal. At the trial she identified the defendant and further testified that various items of jewelry and a sewing machine had been taken from the house.

She further testified that eleven days after the incident she was taken to the courthouse in Johnson County where she viewed two black males in a two-man lineup and initially identified them as the guilty persons. These two persons were later exonerated by the police after further investigation.

Some time thereafter this defendant and his accomplice, Eugene M. Steward, were "fingered" for these crimes by an informer. They were picked up while riding in a car driven and owned by a Mr. Haygood. In the trunk of this car was a sewing machine which Mrs. Walker testified was taken from her house when her husband was shot. She identified the machine by reason of a broken needle and a defective bobbin.

The witness was out of town when the defendant and Steward were picked up. The police sent six or seven "mug shots" or pictures to her for identification. Included in the group were pictures of the two men she originally identified at the Olathe courthouse. Pictures of the defendant, of accomplice Steward and of two or three other

persons were enclosed. She then advised the police department that her original identification at Olathe was in error. She identified the pictures of defendant King and of Steward as being the two who killed her husband. Positive identification of King was made by her at the trial.

Defendant's claim of insufficient evidence is based upon an argument that the erroneous identification of the first two men in Olathe rendered her later identification of the defendant and Steward highly suspect. He further argues that his mother and his girl friend gave clear and convincing testimony that he was in their company when the alleged crime was committed.

These same arguments were made, no doubt, to the jury. It is settled that in considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence which supports the verdict. It does not weigh evidence and if the essential elements of the charge are supported by any competent evidence the conviction must stand. (*State v. Soverns*, 215 Kan. 775, 529 P. 2d 181.) On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state. (*State v. Ritson*, 215 Kan. 742, 529 P. 2d 90.) Finally, the credibility of witnesses will not be passed upon by an appellate court and a defendant has no cause to complain if the jury believed the state's witnesses rather than his own. (*State v. Johnson*, 210 Kan. 288, 502 P. 2d 802.)

In the present case the testimony established at least a reasonable inference of defendant's guilt. The evidence is sufficient to sustain Marlowe King's conviction on all charges.

Defendant's next point on appeal arises from the overruling of defendant's motion for mistrial made after the jury had been selected and sworn to try the case. The prosecution in exercising its peremptory challenges (K. S. A. 22-3412) had struck the last black member from the panel of prospective jurors. It is argued that by excluding all members of the Negro race from the jury the prosecution denied the defendant a fair trial.

This argument is not directed to the initial method by which the entire array was selected for jury service. The attack is directed against the time honored statutory provision for peremptory challenges. The defendant questions the motives of the prosecution in exercising its peremptory challenges.

It has been observed in connection with a challenge to the entire array that:

"Although the law requires that a jury panel be truly representative of a cross-section of the community in which a defendant is to be tried, a Negro defendant in a criminal case is not constitutionally entitled to be tried by a jury on which there is a member, or members, of his race, and he is entitled to relief only upon proof presented by him which discloses a purposeful discrimination to exclude members of a class from the jury panel." (*State v. Clift*, 202 Kan. 512, Syl. ¶ 4, 449 P. 2d 1006, cert. den. 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225.)

It has also been held when challenge is made to the entire array that systematic or purposeful exclusion of members of a particular race or group from jury service may not be assumed and that such exclusion must be established by proof. (See *State v. Reed*, 214 Kan. 562, 520 P. 2d 1314, and *State v. Woods*, 191 Kan. 433, 381 P. 2d 533, cert. den. 376 U. S. 919, 11 L. Ed. 2d 615, 84 S. Ct. 676.)

This court has not considered the precise point raised by this defendant concerning the exercise of peremptory challenges.

The United States Supreme Court in *Swain v. Alabama*, 380 U. S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, reviewed the appeal of a Negro convicted of rape by an all-white jury. Swain argued that he was denied constitutional equal protection of the law by discrimination in the selection of jurors from the veniremen, demonstrated by the fact that the prosecutor exercised his peremptory challenges to remove all members of the Negro race from the jury panel. After an examination of the history, nature, and purpose of the peremptory challenge, the high court said:

". . . [W]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court.

The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. . . ." (380 U. S., pp. 221, 222.)

Other jurisdictions uniformly support the general rule that the fact the state by exercise of peremptory challenges has excluded all members of a race or class from the jury does not alone deprive the accused of his right to a fair trial. (See cases collected in Anno.—Jury—Peremptory Challenge of Class, 4 A. L. R. 2d 1200.)

In the present case appellant has provided no proof establishing his contention of lack of a fair trial, beyond the fact that all Negroes were removed from the jury by the state's exercise of peremptory challenges. Under these circumstances this court must accept the presumption that the prosecution properly used its challenges to obtain a fair and impartial jury regardless of its ultimate racial makeup.

Appellant next complains that he was prejudiced by references elicited by the state concerning his place of residence—a half-way house maintained for paroled felons. The first mention of appellant's residence came during direct examination by appellant's own counsel. Additional references to the half-way house appeared during the state's cross-examination of appellant as the prosecutor traced appellant's whereabouts on the day of the crime. It does not appear that the state introduced any other evidence which might bear on appellant's prior convictions. No violation of the limitations set forth in K. S. A. 60-455 occurred by reason of such references.

A remark made by the prosecutor during his closing argument is more troublesome. In his argument to the jury the prosecutor announced that: ". . . They don't reserve a bed for you at the Half-Way House for regular Sunday church attendance, and you all know that." Appellant's counsel posed an immediate objection, which was sustained by the trial court. The court admonished the jury to disregard the prosecutor's overly zealous statement.

An analogous situation arose in *State v. Kane,* 218 Kan. 13, 542 P. 2d 335. There during cross-examination the prosecutor asked the defendant whether he had previously been through police line-ups. Over objection by defense counsel defendant answered that he had. The trial court sustained the objection, refused to declare a mistrial and admonished the jurors to disregard the prosecutor's

question and the defendant's answer.   On appeal this court found
no prejudicial error and said:

"The trial court in ruling on defendant's motion found no error sufficient to
warrant a mistrial.   We have recognized that the trial judge is in a far better
position than this court to assess the impact of improper questioning by the
prosecuting attorney on the jury.   [Citation omitted.]   It is our opinion that
any prejudice that may have arisen from the prosecutor's cross-examination
of defendant in the present case was cured by the trial court's forthright ad-
monition to the jury."   (*State v. Kane,* 218 Kan. p. 16.)

Other cases support the reasoning expressed in *Kane.*   ( See *State
v. Bradford,* 219 Kan. 336, 548 P. 2d 812; *State v. Johnson,* 216 Kan.
445, 532 P. 2d 1325, and *State v. Warbritton,* 215 Kan. 534, 527
P. 2d 1050.)   The trial court's admonition to the jury in this case
must be considered to have cured any prejudice which might
have arisen from the prosecutor's improper remark to the jury.

It is the general rule that before an objectionable statement or
question made by the prosecutor will entitle the accused to a reversal
of his conviction it must first appear that it was injurious to the
accused and was likely to affect the jurors to his prejudice.   (*State
v. Murrell,* 215 Kan. 10, 523 P. 2d 348, and *State v. Gauger,* 200
Kan. 515, 438 P. 2d 455.)

Appellant contends that certain photographs depicting the scene
of the murder in and around the Walker residence should not have
been admitted in evidence.   We previously examined these identical
photographs in *State v. Steward,* 219 Kan. 256, 547 P. 2d 773.   These
pictures were used in the previous trial of appellant's accomplice,
Eugene M. Steward.   What was said in *State v. Steward,* supra, ap-
plies.   Photographs are not rendered inadmissible as evidence merely
because they may be shocking and gruesome.   They are admissible
if they are relevant and material to matters in issue.   These pho-
tographs were properly admitted.

Appellant next contends the trial court erred by refusing to in-
struct the jury on possible lesser homicide offenses included within
every first degree murder charge.   The statutory rule requiring
instructions to the jury on lesser included homicide offenses is
applicable only when it is called for by evidence introduced during
the trial and when the jury might reasonably convict the accused
of a lesser included homicide offense on proper instructions.   (See
K. S. A. 21-3107 [3]; *State v. McCorgary,* 218 Kan. 358, 365, 543 P.

2d 952, and *State v. Schoenberger,* 216 Kan. 464, 532 P. 2d 1085.)

In this case the evidence clearly showed malicious premeditation on the part of appellant and his accomplice with intent to kill Billy Walker.

They advised Mrs. Walker they had come to kill both her and her husband since they "had a three thousand dollar ($3,000) contract" on them. No evidence was introduced to indicate any lesser included homicide offense, thus no instruction on lesser included offenses was necessary.

We have examined each point raised by appellant on appeal and find no reversible error. The judgment is affimed.