No. 49,853

STATE OF KANSAS, *Appellee,* v. STEVON STEWART, *Appellant.*

(591 P.2d 166)

Opinion filed February 24, 1979.

*Carl E. Cornwell,* of Kansas City, Kansas, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal in a criminal action from jury verdicts finding Stevon Stewart guilty of aggravated burglary (K.S.A. 21-3716), first-degree murder (K.S.A. 21-3401), rape (K.S.A. 21-3502), and aggravated robbery (K.S.A. 21-3427). From these convictions defendant appeals.

At approximately 5:00 p.m. on June 17, 1977, the body of eighty-eight-year-old Margaret Pearson, a Caucasian, was found in her home in Kansas City, Kansas. The victim was on her bed with her feet tied. Her nightgown was pulled up above her waist. There was dried blood on her mouth and on her nightgown. An autopsy revealed she had a bruise on the top of her head, bruises on her genitals, nine ribs had been fractured, and her death was the result of manual strangulation. The glass in the front door to her home had been broken from the outside and a basket containing various items of the victim's personal property was sitting near the door. The house had been ransacked.

Other facts will be stated as needed to determine the issues raised. We turn now to the points of error raised by appellant.

## I.

### THE COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO DISMISS PRIOR TO THE TRIAL AND AGAIN DURING THE TRIAL AS THE APPELLANT WAS THE VICTIM OF A WARRANTLESS ILLEGAL ARREST.

Shortly before noon on Saturday, June 18, 1977 (the day following discovery of the crimes), the police received an anonymous telephone call between 11:00 a.m. and noon, stating that the party the police were seeking on the Pearson homicide was Stevon Stewart and that the police should talk to Jo Anne Burns of 1535 Haskell because Stevon Stewart had tried to break into her house around 1:30 a.m. on June 17. A statement was taken from Jo Anne Burns in which she said that Mr. Stewart did try to force a screen at her home about 1:30 a.m. on June 17 and that he stated he wanted to talk to her brother, Jeffrey Burns. Jo Anne and Jeffrey Burns were both teenagers and their home was located approximately one block from the victim's home. Police officers contacted Jeffrey Burns and he advised them he had talked to defendant later in the day on June 17 and that defendant had a Luger pistol and an abundance of money. He further told an officer that defendant told him he "had to do an old lady in." It should be noted that this latter statement was not a part of Jeffrey Burns' testimony at preliminary hearing or trial, but in this issue we are only dealing with the information the police had prior to defendant's arrest.

Stevon Stewart was determined to be a juvenile and a call was made to the Wyandotte County Juvenile Court for authority to photograph and fingerprint defendant if he were apprehended. This was done in accordance with K.S.A. 1976 Supp. 38-815a(a) (now K.S.A. 1978 Supp. 38-805c[a]). Since the call came on a Saturday, the judge was not available and, pursuant to general authority delegated by the judge, a probation officer approved the request, prepared an order of authorization, and stamped a reproduction of the judge's signature thereon. The police officer then asked the probation officer for a description of defendant and was told by the probation officer that defendant's court file contained photographs and a fingerprint card. The police then obtained copies of the photographs and fingerprint card with approval of the probation officer but without court order. Defendant's fingerprints, as taken from the card, matched several

latent fingerprints previously lifted from the crime scene. Shortly thereafter, a pickup order for defendant was issued.

The following morning, Sunday, June 19, defendant was apprehended and fingerprinted. A locket subsequently identified as belonging to the victim was on defendant's person at the time of his arrest. Subsequently, the juvenile court judge ratified the order to photograph and fingerprint defendant. Defendant was certified to stand trial as an adult and a preliminary hearing was had in due course.

On October 7, 1977, the district court found the order to photograph and fingerprint defendant was improper as the authority granted to the court by K.S.A. 1976 Supp. 38-815a(*a*) (now K.S.A. 1978 Supp. 38-805c[*a*]) could not be delegated. The court further found the photographs and fingerprint card from the juvenile court had been improperly obtained (as not being in compliance with K.S.A. 1976 Supp. 38-805, since amended in areas not relevant here). In accordance with such findings, he ordered such evidence and the comparisons made therefrom suppressed. The question of the propriety of these determinations is not before us and the matter will not be considered.

Defendant contends that without the suppressed evidence probable cause to arrest was lacking. We do not agree.

The rules on probable cause for arrest without warrant were set forth in *State v. Brocato,* 222 Kan. 201, 203, 563 P.2d 470 (1977):

"K.S.A. 22-2401(*c*)(1) provides a law enforcement officer may arrest a person when he has probable cause to believe that the person is committing or has committed a felony. In *State v. Lamb,* 209 Kan. 453, 497 P.2d 275, this court examined what constitutes probable cause. Probable cause for arrest without a warrant depends upon the probabilities arising from known facts and circumstances and exists when the practical considerations of everyday life would lead a reasonable and prudent officer to believe a felony has been or is being committed."

In *State v. Curtis,* 217 Kan. 717, Syl. ¶¶ 1-3, 538 P.2d 1383 (1975), we said:

"Probable cause, to believe that a person has committed a felony to justify an arrest of such person by a law enforcement officer under the provisions of K.S.A. 22-2401(*c*)(1), refers to that quantum of evidence which would lead a prudent man to believe that an offense has been committed. It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove guilt is more probable than not. It is only necessary the evidence lead the officer to believe that guilt is more than a possibility, and it is well-established that the belief may be predicated in part upon hearsay information.

"The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case.

"In determining probable cause, all the information in the officer's possession, fair inferences to be drawn therefrom, and observations made by him are generally pertinent, and facts may be considered that would not be admissible on the issue of guilt."

Accord, *State v. Brown*, 220 Kan. 684, 556 P.2d 443 (1976).

Even without the suppressed evidence, probable cause for arrest was present.

The point is found to be without merit.

## II.

THE COURT ERRED IN ALLOWING EVIDENCE OF APPELLANT'S FINGERPRINTS TO BE USED AT TRIAL AS SAID EVIDENCE WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT OF THE U. S. CONSTITUTION.

After the suppression of the fingerprint comparison evidence, police officers took new fingerprint exemplars from defendant on October 11, 1977, and comparisons were made with the latent prints lifted from the crime scene. As before, some thirty matches were made. This was the only fingerprint evidence admitted at trial. We have previously held that probable cause existed for the arrest and the fingerprint exemplars admitted at the trial were taken while defendant was in lawful detention. It should be noted that defendant had been certified to stand trial as an adult prior to the taking of his fingerprint exemplars on October 11. No error is shown in the admission of the fingerprint evidence. See *State v. Brown*, 220 Kan. 684, 556 P.2d 443 (1976).

## III.

THE COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR A NEW PRELIMINARY HEARING.

The fingerprint evidence subsequently suppressed was admitted at the preliminary hearing. Defendant's motion for a new preliminary hearing was denied after the judge hearing the motion reviewed the transcript of the preliminary hearing. The defendant argues the evidence introduced at the preliminary hearing was insufficient without the subsequently suppressed evidence at the preliminary hearing. There was testimony: (1) That hair found on the victim's bed was similar to that taken from defendant; (2) of Jo Anne Burns, placing defendant in the area of the crime scene early the Friday morning before discovery of the

body; (3) of Jeffrey Burns (also known as "Taterhead") that, on the same day, he had seen defendant with a gun and that defendant told him it was a Luger; (4) of a nine-millimeter bullet falling from defendant's gun when he unloaded the gun while he was at the Burns residence, and its subsequent retrieval by an officer; (5) that the victim owned a nine-millimeter pistol; and (6) of the anonymous phone call previously referred to. In addition, there was considerable evidence of the crimes themselves.

Defendant further argues his right to be apprised of the sort of evidence he will be required to meet at trial has been abridged.

The nature and purpose of a preliminary hearing was discussed in *In re Mortimer,* 192 Kan. 164, Syl. ¶¶ 1-3, 386 P.2d 261 (1963):

"A preliminary examination is not a trial of defendant's guilt; it is rather an inquiry whether the defendant should be held for trial.

"The principal purpose of a preliminary examination of one accused of crime is to determine that a crime has been committed and to give him general information of the nature of the crime charged, and apprise him of the sort of evidence he will be required to meet when he is subjected to a final prosecution in the district court.

"In such an examination it is not necessary that the evidence upon which the accused is bound over for trial be sufficient to support a conviction. It is enough if it is shown that the offense charged had been committed and there is probable cause to believe the defendant committed the offense."

Accord, *State v. Adams,* 218 Kan. 495, 545 P.2d 1134 (1976); *State v. Smith,* 215 Kan. 34, 36-37, 523 P.2d 691 (1974).

There was no contention that defendant was unconscious at the time his fingerprint exemplars were taken on October 11, or that he was for any other reason unaware of what was occurring. His motion for a new preliminary hearing was filed one day after the new exemplars were taken so one must assume his memory of the event was still fresh. Likewise, it should have come as no surprise that the new fingerprint exemplars matched the latent prints from the crime scene, just as the old suppressed exemplars did, and that such comparison evidence would be used at trial.

We conclude the trial court did not err in overruling the motion for a new preliminary hearing.

## IV.

THE COURT ERRED IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF THE AUTOPSY ON THE VICTIM WHEN SAID EVIDENCE HAD NO PROBATIVE VALUE AND WAS USED TO AROUSE THE PASSION AND SYMPATHY OF THE JURY.

The pathologist who had performed the autopsy on the victim testified at trial. His testimony has been carefully reviewed and is found to be a straightforward account of what was found. The approach was matter-of-fact and not unduly involved as to the actual autopsy procedures. Defendant was charged with first-degree murder and rape. The testimony was relevant to show cause of death (manual strangulation), the rape, the violent and brutal nature of the attack, and premeditation. See *State v. Phipps,* 224 Kan. 158, 578 P.2d 709 (1978).

No error is shown.

## V.

THE COURT ERRED IN NOT DISMISSING THE JURY AS THE STATE, FOR NO JUST CAUSE, DENIED THE PRESENCE ON THE JURY OF ANY BLACK AMERICANS.

After the jury was impaneled defendant sought to have the jury dismissed by virtue of the State removing all black people from the panel through the use of its peremptory challenges. The transcript of the proceedings on the motion is as follows:

"THE COURT: Let the record show this proceeding is held in chamber outside the hearing of the jury and defendant present and in person with counsel.

"MR. CORNWELL: At this time after we have picked the jury and the jury is impaneled, it is obvious there are no black members on the jury and we have a black defendant. There were seven, if my count is correct, who were voir dired.

"THE COURT: There were nine black members on the panel.

"MR. CORNWELL: None of those appear on the jury. At this time, I object to the composition of the jury. Wyandotte County is 24 or 25 percent black. My client is entitled to be tried by a jury panel, a cross section of the city and county of Wyandotte. There are no black members. With that, I object to the composition of the jury and I have no idea why Mr. Tomasic struck every member. I struck none. I would object and I ask that the panel be dismissed.

"MR. TOMASIC: That's not law which Mr. Cornwell stated. A person has no right to be tried by any particular race, and that was one of the peremptory challenges. I don't have to explain those challenges and it's a valid panel.

"THE COURT: Mr. Cornwell, I believe there was 41 jurors on the panel, if I recall, and nine of those were black members of our community. This would be approximately 22 or 23 percent which, I think, is a fair representation of the black community on the panel. One of those members was excused by the Court for

cause, as well as two white members were excused for cause at your request. The remaining eight members, it was quite obvious during voir dire examination why Mr. Tomasic struck two or three of those remaining members because of their answer to voir dire questions. I don't know why Mr. Tomasic struck the other ones. This Court can't enter into the peremptory challenges. Each lawyer, as long as the panel is constitutionally composed and legally composed as this was, this Court can't compel trial attorneys to pick certain members of the panel as jury members. I don't believe there is any legal basis for your objection. I don't think this Court has any alternative but to overrule your objection.

"MR. CORNWELL: I made my record. I would ask that it be discharged because of the composition."

This issue has previously been before this court in *State v. King,* 219 Kan. 508, 548 P.2d 803 (1976), wherein we said:

"Defendant's next point on appeal arises from the overruling of defendant's motion for mistrial made after the jury had been selected and sworn to try the case. The prosecution in exercising its peremptory challenges (K.S.A. 22-3412) had struck the last black member from the panel of prospective jurors. It is argued that by excluding all members of the Negro race from the jury the prosecution denied the defendant a fair trial.

"This argument is not directed to the initial method by which the entire array was selected for jury service. The attack is directed against the time honored statutory provision for peremptory challenges. The defendant questions the motives of the prosecution in exercising its peremptory challenges.

"It has been observed in connection with a challenge to the entire array that:

" 'Although the law requires that a jury panel be truly representative of a cross-section of the community in which a defendant is to be tried, a Negro defendant in a criminal case is not constitutionally entitled to be tried by a jury on which there is a member, or members, of his race, and he is entitled to relief only upon proof presented by him which discloses a purposeful discrimination to exclude members of a class from the jury panel.' (*State v. Clift,* 202 Kan. 512, Syl. ¶ 4, 449 P.2d 1006, cert. den. 396 U.S. 910, 24 L.Ed.2d 186, 90 S.Ct. 225.)

"It has also been held when challenge is made to the entire array that systematic or purposeful exclusion of members of a particular race or group from jury service may not be assumed and that such exclusion must be established by proof. (See *State v. Reed,* 214 Kan. 562, 520 P.2d 1314, and *State v. Woods,* 191 Kan. 433, 381 P.2d 533, cert. den. 376 U.S. 919, 11 L.Ed.2d 615, 84 S.Ct. 676.)

"This court has not considered the precise point raised by this defendant concerning the exercise of peremptory challenges.

"The United States Supreme Court in *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed.2d 759, 85 S.Ct. 824, reviewed the appeal of a Negro convicted of rape by an all-white jury. Swain argued that he was denied constitutional equal protection of the law by discrimination in the selection of jurors from the veniremen, demonstrated by the fact that the prosecutor exercised his peremptory challenges to remove all members of the Negro race from the jury panel. After an examination of the history, nature, and purpose of the peremptory challenge, the high court said:

" ' . . . [W]e cannot hold that the striking of Negroes in a particular case

is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

" 'In the light of the purpose of the peremptory system and the fraction it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. . . .' (380 U.S., pp. 221, 222.)

"Other jurisdictions uniformly support the general rule that the fact the state by exercise of peremptory challenges has excluded all members of a race or class from the jury does not deprive the accused of his right to a fair trial. (*See* cases collected in Anno.—Jury—Peremptory Challenge of Class, 4 A.L.R.2d 1200 [now 79 A.L.R.3d 14].).

"In the present case appellant has provided no proof establishing his contention of lack of a fair trial, beyond the fact that all Negroes were removed from the jury by the state's exercise of peremptory challenges. Under these circumstances this court must accept the presumption that the prosecution properly used its challenges to obtain a fair and impartial jury regardless of its ultimate racial makeup." (pp. 510-12.)

Defendant calls our attention to the fact that since *King,* one jurisdiction has departed from the general rule. The case so holding is *People v. Wheeler,* 22 Cal. 3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978). The *Wheeler* case involved a situation wherein the prosecutor asked few, if any, voir dire questions of black prospective jurors, passed them all for cause, and then excused them all on peremptory challenges. The California Supreme Court held that this created a prima facie showing of group bias and the burden shifted to the prosecution to respond. The California Court based its decision in this regard wholly on the California Constitution, specifically disapproving the holding to the contrary in *Swain.*

After careful consideration of *Wheeler,* we adhere to *King.*

All points raised have been considered and found to be without merit. The judgment is affirmed.