No. 50,249

STATE OF KANSAS, *Appellee*, v. EDWARD TAYLOR, SR., Appellant.

(594 P 2d 211)

Opinion filed May 5, 1979.

*Gerald E. Weaver,* of Vaughn, Updegraff, Allison, Holloway & Weaver, of Wichita, was on the brief for the appellant.

*Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Robert J. Sandilos,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: A Sedgwick County jury convicted Edward Taylor, Sr. of two counts of aggravated robbery (K.S.A. 21-3427). After a finding that a firearm was involved in one of the counts, the trial court sentenced the defendant to prison for not less than five years nor more than life. Defendant appeals.

On January 2, 1978, at approximately 6:30 P.M. Jack Wilson, a cab driver for American Cab Co., picked up a fare at St. Francis Hospital in Wichita. The passenger was a black male, about six feet tall, one hundred eighty pounds, wearing a brown army jacket and a dark blue pullover stocking cap. Wilson later identified the passenger as the defendant.

Taylor directed Wilson to take him to the twenty-five hundred block on Minneapolis Street, and from there to drive him to 13th and Kansas. Upon arriving there, the defendant pulled out a small caliber, silver revolver and threatened "to blow the cab driver's head off" if he didn't follow orders. Wilson drove on following

Taylor's instructions who debated aloud about killing Wilson, and told him to have two police officers meet him out there where he'd be waiting with a shotgun.

Taylor got out of the cab at 14th and Kansas taking the driver's money with him. Thereafter, Wilson reported the crime to the police and at the trial identified the defendant as his assailant.

Panfilo Villa, another cab driver for American Cab Co., was directed to pick up two fares at the bus station on February 18, 1978, at about 1:00 A.M. When he arrived there, an elderly white man and a young black man about six feet tall, wearing an army coat and a dark stocking cap entered the cab. Villa later identified the younger man as the defendant.

Villa took the elderly man to the Renfro Hotel and proceeded to 14th and Kansas with the defendant, as directed. Just before arriving at their destination, Taylor brandished a knife and ordered Villa to keep driving.

At 14th and Kansas defendant then ordered the driver to stop, count out the cab money and give it to him. After doing so, Villa was ordered to drive on, during which time Taylor told him to call officers O'Brien and Sounders, whom defendant stated he wanted to see and talk to.

Taylor got out of the cab at 14th and Minneapolis and Villa radioed the dispatcher who called the police. Defendant was apprehended at his home in the fifteen hundred block on Pennsylvania Street where Villa identified him some ten minutes later. Defendant objects to this identification.

Taylor was charged with two counts of aggravated robbery. At the preliminary hearing Wilson testified that about three weeks after the robbery, the exact date unknown, he saw a man who looked like the defendant get into a pale, yellow Volkswagen at the corner of Douglas and St. Francis and that he took down the license number and reported it to the police, but nothing came of it.

Taylor plead alibi.

During voir dire, two of the prospective jurors stated they had worked in Vern Miller's campaign for Sedgwick County District Attorney the preceeding year. The trial court refused to strike them. The prosecutor then used two of his peremptory challenges to strike the only two black members of the jury panel and the trial court upheld that action.

Those are pertinent facts; let us now consider appellant's points of error.

1.

## IT WAS ERROR FOR THE STATE TO FAIL TO FURNISH THE DEFENDANT EXCULPATORY INFORMATION CONCERNING THE SIGHTING OF THE ROBBER BY ONE OF THE VICTIMS SEVERAL WEEKS AFTER THE ROBBERY.

Defendant filed a motion for discovery of "any exculpatory matter, including information relating to a pale yellow Volkswagen which one witness thought he had seen the robber enter," which the trial court granted. The license tag number of the vehicle was never provided to the defendant because the police stated they could not locate that information. On April 26, 1978, before the trial began, defendant requested a continuance because the information had not been provided. The request was denied. Defendant contends the information could have led the defense to the real robber since his own testimony showed he did not own a car and always walked or took a cab everywhere, and information pertaining to the Volkswagen was important to his defense because the driver could be the robber.

It is well established that the State has a positive duty, independent of a court order, to disclose all known exculpatory evidence to the defense. In *State v. Hill*, 211 Kan. 287, 292, 507 P.2d 342 (1973), it was stated:

"The circumstances under which the suppression of evidence could render a conviction constitutionally infirm . . . are: (1) Deliberate bad faith suppression for the very purpose of obstructing the defense or the intentional failure to disclose evidence whose highly probative value to the defense could not have escaped the prosecutor's attention; (2) deliberate refusal to honor a request for evidence where the evidence is material to guilt or punishment irrespective of the prosecutor's good faith or bad faith in refusing the request; and

3) where suppression was not deliberate and no request for evidence was made, but where hindsight discloses it was so material that the defense could have put the evidence to significant use.

"In order to cause reversal the evidence suppressed must be clearly and unquestionably exculpatory and suppression clearly prejudicial to defendant."

The suppression of the evidence in this case was not deliberate or in bad faith and not so alleged but more importantly, it was not clearly and unquestionably exculpatory; in fact, it was more than likely adverse to the defendant's interest. The point is without merit.

2.

## THE IN-COURT IDENTIFICATION OF THE DEFENDANT BY MR. VILLA SHOULD HAVE BEEN SUPPRESSED BECAUSE IT WAS IRREPARABLY TAINTED BY THE SUGGESTIVE IDENTIFICATION PROCEDURES USED ON THE NIGHT OF THE ROBBERY.

Defendant claims a line-up should have been arranged instead of using the on-the-scene identification by Villa.

It is well established that on-the-scene identifications are desirable because of the higher degree of reliability and thus it is less likely that an innocent suspect be detained. *State v. Meeks*, 205 Kan. 261, 266, 469 P.2d 302 (1970); *Bates v. United States*, 405 F.2d 1104 (D.C. Cir. 1968). See also *State v. Kress*, 210 Kan. 522, 502 P.2d 827 (1972).

The test for judging identification procedures is set out in *Stovall v. Denno*, 388 U.S. 293, 302, 18 L.Ed.2d 1199, 87 S.Ct. 1967 (1967), as follows:

"[A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it  .   .   .  ."

The exact identification procedures used in the present case have been approved in other cases. See *State v. Griffin*, 217 Kan. 703, 705, 538 P.2d 720 (1975); *State v. Kress*, 210 Kan. 522, *State v. Meeks*, 205 Kan. at 266.

We find no prejudice to the defendant in the identification procedures used in this case.

3.

## IT WAS ERROR FOR THE PROSECUTOR TO ATTEMPT TO CONTRADICT TESTIMONY OF HIS OWN WITNESS CONCERNING THE TIME OF THE FIRST ROBBERY.

Defendant complains of the use of rebuttal witnesses to testify as to the time of day it got dark on the day of the robbery. Their testimony didn't completely agree with the victim's and was dubbed impeachment by the defendant.

Such testimony is not precluded as recognized in *State v. Blocker*, 211 Kan. 185, Syl. ¶ 6, 505 P.2d 1099 (1973):

"A party is not concluded by the testimony of any witness he has called but may introduce other competent evidence to prove a fact even though the latter evidence may tend to impeach or contradict the testimony of the previous witness."

In addition, the testimony complained of was properly admitted pursuant to K.S.A. 60-420.

The point of error is without merit.

4.

ALLOWING THE JURY TO HEAR THE TESTIMONY OF OFFICER MATHEWS CONCERNING THE SCUFFLE WAS ERROR IN THE ABSENCE OF A LIMITING INSTRUCTION.

This point of error pertains to the state calling Officer Mathews to rebut the defendant's testimony about a scuffle. The defendant has no cause to complain because he testified concerning the scuffle and the rebuttal witness then properly took the stand to explain his version of what occurred. *State v. Blue,* 221 Kan. 185, 558 P.2d 136 (1976); *State v. Childers,* 222 Kan. 32, Syl. ¶ 9, 563 P.2d 999 (1977).

As to the matter of a limiting instruction, we hold that the instructions, taken as a whole, properly advised the jury about consideration of the rebuttal evidence in question and the defendant failed to properly request a limiting instruction or to show that the instructions as given were clearly erroneous. *State v. Stafford,* 223 Kan. 62, 573 P.2d 970 (1977).

5.

THE VERDICT WAS CONTRARY TO THE EVIDENCE AND SHOULD HAVE BEEN SET ASIDE BY THE TRIAL COURT.

The trial court overruled a defense motion for a judgment of acquittal. This point of error pertains to that and to the sufficiency of the evidence to support the conviction.

This court has spoken repeatedly on the test for motion for judgment of acquittal. In *State v. Sanders,* 225 Kan. 147, 151, 587 P.2d 893 (1978) this court said, quoting from *State v. Gustin,* 212 Kan. 475, Syl. ¶ 3, 510 P.2d 1290 (1973):

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion."

We hold that the trial court properly overruled the motion because, on the evidence, guilt beyond a reasonable doubt was a fairly possible result.

With regard to the sufficiency of the evidence to support the

conviction, defendant argues that the failure of the State to produce the weapons, and the unrebutted alibi testimony of Mrs. Taylor at the trial, do not support a verdict of guilty.

"On appellate review, the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt." *State v. McGee,* 224 Kan. 173, 178, 578 P.2d 269 (1978); *State v. Ames,* 222 Kan. 88, 95, 563 P.2d 1034 (1977).

And in *State v. Ames,* 222 Kan. at 95, it was stated:

"In making this determination, the evidence is viewed in the light most favorable to the state."

All of the state's evidence refuted defendant's alibi so there was no unrebutted testimony and the jury had the duty to weigh that evidence as well as the testimony about weapons.

Applying the tests, above set out, we find sufficient evidence to support the conviction.

### 6.

THE TRIAL COURT ERRED IN REJECTING DEFEND-ANT'S PROPOSED INSTRUCTION ON THE LESSER IN-CLUDED OFFENSE OF SIMPLE ROBBERY.

This court has stated that K.S.A. 21-3107(3) requires instructions as to lesser crimes only where there is evidence under which a defendant might have reasonably been convicted of the lesser crime. *State v. Huff,* 220 Kan. 162, 167, 551 P.2d 880 (1976). In the instant case, the victims stated they saw a firearm and a knife, respectively, and although the evidence was uncorroborated, the defendant adduced no evidence to show otherwise; he relied solely on his alibi.

Therefore, the jury had to decide whether to believe that a man, armed with a dangerous weapon, robbed the two cab drivers, or defendant's alibi. The use of the dangerous weapons was not directly in dispute. Under these circumstances defendant could be convicted only of aggravated robbery or acquitted.

Defendant's point is without merit.

### 7.

THE TRIAL COURT ERRED IN REFUSING TO STRIKE FOR CAUSE TWO MEMBERS OF THE JURY PANEL WHO HAD WORKED IN VERN MILLER'S CAMPAIGN FOR ELECTION AS DISTRICT ATTORNEY.

Defendant moved to strike for cause the two members of the panel who worked in Vern Miller's campaign. The trial court denied the motion.

K.S.A. 22-3410 authorizes challenges for cause for several reasons; however, defendant has not stated upon what specific grounds he challenges the jurors. The record indicates that during voir dire, both attorneys and the trial judge examined the two panel members closely for prejudice or bias which might have arisen through their efforts for Miller. Neither of them acknowledged any such prejudice and both stated they believed they could serve as impartial jurors.

We have stated:

"Whether a prospective juror is qualified to sit in the trial of a case is a question for determination by the trial court and its ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion." *State v. Sanders,* 223 Kan. 273, 275-6, 574 P.2d 559 (1977).

"It is clear that the trial court is in a better position than this court to view the demeanor of prospective jurors as they are questioned." *State v. Mahkuk,* 220 Kan. 74, 76, 551 P.2d 869 (1976).

There is not evidence of bias or prejudice on the part of the two jurors and, as "the general trend of recent decisions seems to require a showing of some actual bias" (*State v. Mahkuk,* 220 Kan. at 76-77), we find no abuse of discretion. Defendant had the right to use peremptory challenges on the two jurors.

## 8.
## IT WAS IMPROPER FOR THE STATE TO STRIKE THE ONLY TWO BLACK MEMBERS OF THE JURY PANEL.

The defendant contends the State acted improperly when it removed the black members of the jury panel by peremptory challenge.

His argument is not well taken.

The well-established rule is:

"[A]lthough a black defendant does not have the right to demand that members of his race be included on a jury (*State v. Jordan,* 220 Kan. 110, 114, 551 P.2d 773 [1976]), the defendant has a right to require that the state not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice. *Alexander v. Louisiana,* 405 U.S. 625, 628-29, 31 L.Ed.2d 536, 92 S.Ct. 1221 (1972)." *State v. Sanders,* 225 Kan. 147, 148-149, 587 P.2d 893 (1978).

This court has repeatedly held, "when a challenge is made to the entire jury array, systematic or purposeful exclusion of members of a particular race or group may not be presumed. Such exclusion must be established by proof." *State v. Sanders,* 225

Kan. at 149. See also *State v. Stewart,* 225 Kan. 410, 591 P.2d 166 (1979).

In the instant case there was no challenge to the array; it was obviously racially mixed and the State had the right to use its peremptory challenges (K.S.A. 22-3412) as it deemed appropriate, as did the defendant. *State v. King,* 219 Kan. 508, 548 P.2d 803 (1976). To hold otherwise would be to change the historical method of obtaining a jury and to ignore the definition of "peremptory" which, according to Black's Law Dictionary 1295 (4th ed. rev. 1968), means "not requiring cause to be shown."

9.

## THERE WAS INSUFFICIENT BASIS FOR THE FINDING BY THE TRIAL COURT THAT A FIREARM WAS INVOLVED IN THE CRIME.

Defendant argues the evidence didn't support a finding by the trial court that a firearm was used in the crime. No weapon was recovered, no injuries occurred during the robberies and the witness who testified the robber used a gun did not know if the gun was loaded.

We addressed this issue in *State v. Mullins,* 223 Kan. 798, 801, 577 P.2d 51 (1978):

"[W]hether a defendant used a firearm in the commission of an Article 34 offense is a matter to be determined by the trial judge at the time of sentencing."

The firearm question caused by K.S.A. 1978 Supp. 21-4618 is a fact issue and as we have previously held in considering the sufficiency of evidence to sustain a conviction an appellate court looks only to the evidence which supports the verdict and if the conviction is supported by any competent evidence, it will stand. *State v. King,* 219 Kan. 508.

There was sufficient evidence to support the court's finding that a firearm was used in the perpetration of the crime in this case and it will not be disturbed.

We have examined each point raised by appellant on appeal and find no reversible error. The judgment is affirmed.