No. 60,175

STATE OF KANSAS, *Appellee*, v. KENNETH W. HOOD, *Appellant*.

(744 P.2d 816)

Opinion filed October 30, 1987.

*Jessica R. Kunen*, deputy appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the briefs for the appellant.

*Mona Furst*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Kenneth W. Hood was charged with and was convicted by jury trial in Sedgwick County District Court of aggravated burglary, K.S.A. 21-3716; aggravated kidnapping,

K.S.A. 21-3421; aggravated robbery, K.S.A. 21-3427; and rape, K.S.A. 1986 Supp. 21-3502. The trial court sustained the State's motion to invoke the Habitual Criminal Act, K.S.A. 1986 Supp. 21-4504, and imposed sentences of 10 to 40 years for aggravated burglary; life imprisonment for aggravated kidnapping; 30 years to life for aggravated robbery; and 30 years to life for rape. The sentences for aggravated kidnapping and aggravated robbery run concurrent with each other and consecutive to the sentence for aggravated burglary, and the sentence for rape runs consecutive to the sentences for aggravated kidnapping and aggravated robbery. All sentences run consecutive to the sentence from which the defendant was on parole at the time of the commission of these offenses.

Hood appeals, raising three issues: that the State exhibited purposeful racial discrimination in removing the only two black jurors by the exercise of its peremptory challenges; that the trial court erred in continuing the trial with eleven jurors, with the defendant's written consent but without the consent of his counsel, and without determining defendant's competency to waive a jury of twelve; and that the evidence was insufficient to support defendant's conviction of aggravated kidnapping. We turn first to the matter of the exercise of peremptory challenges by the State.

A review of the case and statutory law surrounding this issue will be helpful at the outset. Challenges for cause are governed by K.S.A. 22-3410. Some nine different grounds of challenge for cause are enumerated therein. Peremptory challenges, however, are not challenges for cause, but historically are challenges determined by the attorneys on each side without showing any cause. They are exercised after challenges for cause have been ruled upon and after a qualified panel has been selected. The peremptory challenges are then exercised in order to reduce the panel to the number of jurors required to try the case. The number of peremptory challenges granted to each side in a criminal prosecution is governed by K.S.A. 1986 Supp. 22-3412.

Our prior cases have held that a defendant has a right to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice. *State v. Sanders*, 225 Kan. 147, 149, 587

P.2d 893 (1978). We have also held in prior cases that a defendant does not have the right to demand that members of his race or minority group be included on the trial jury. Error would occur only if the race or group were systematically excluded from jury service. See *State v. Levier*, 226 Kan. 461, 466-67, 601 P.2d 1116 (1979); *State v. Holloway*, 219 Kan. 245, Syl. ¶ 5, 547 P.2d 741 (1976). Also, we have previously held that the fact that the State exercised its peremptory challenges to remove the only members of the accused's race or group from the trial jury did not alone deprive the accused of a fair trial. See *State v. Taylor*, 225 Kan. 788, 594 P.2d 211 (1979); *State v. King*, 219 Kan. 508, Syl. ¶ 2, 548 P.2d 803 (1976); *State v. Holloway*, 219 Kan. at 249.

The rule laid down in the last three cases relating to the State's exercise of peremptory challenges, however, is no longer the controlling law in that area. The United States Supreme Court enunciated a new rule in the case of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Trial in the case now before us was concluded and Hood was convicted on April 24, 1986; the *Batson* decision was announced on April 30, 1986; Hood was sentenced by the trial court on May 9, 1986. On January 13, 1987, the United States Supreme Court announced its decision in the case of *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). *Griffith* holds that the new constitutional rule established in *Batson* must be applied retroactively to cases which are pending upon direct appellate review, or which were not final, at the time the new rule was established. The Court said:

"The fact that the new rule may constitute a clear break with the past has no bearing on the 'actual inequity that results' when only one of many similarly situated defendants receives the benefit of the new rule. [Citation omitted.]

"We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 327-28.

Therefore, under *Griffith*, the rule established in *Batson* must be applied in this case, and in all Kansas cases which are pending on direct appeal, or which are not yet final, or which arose after April 30, 1986.

Batson, a black man (as is defendant Hood), was indicted in

Kentucky and charged with second-degree burglary and receipt of stolen property. On the first day of trial, the prosecutor used his peremptory challenges to strike all four black persons on the venire, and a jury composed of only white persons was selected to try the case. Defense counsel moved to discharge the jury before it was sworn on the ground that the prosecutor's removal of the black jurors violated his client's Sixth and Fourteenth Amendment rights to a jury drawn from a cross section of the community, and his rights under the Equal Protection Clause of the Fourteenth Amendment. The trial judge ruled that the parties were entitled to use peremptory challenges to strike any juror they wished, and denied the motion. The Supreme Court of Kentucky affirmed, observing that it had recently reaffirmed its reliance on *Swain v. Alabama,* 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965), and consequently decided not to follow California and Massachusetts cases as suggested by Batson's counsel. In *Swain,* the prosecutor exercised his six peremptory challenges by striking all of the six blacks from the panel, with the result that Swain, a black man, was convicted by a jury from which all members of his race had been removed. The *Swain* court held that:

"The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome . . . by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it." 380 U.S. at 222.

The Court went on to explain that a state may not exercise its challenges in controvention of the Equal Protection Clause, and also stated that a black defendant could make out a prima facie case of purposeful discrimination on proof that the peremptory challenge system was being perverted. The Court said:

"[W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance." *Swain v. Alabama,* 380 U.S. at 223.

The Court in *Swain* concluded that the petitioner had not in-

troduced sufficient evidence in that case to sustain his burden of proof.

In *Batson*, the United States Supreme Court observed that a number of lower courts, following *Swain*, reasoned that proof of repeated striking of blacks by the prosecution over a number of cases, and not just in the case then being considered, was necessary to establish a violation of the Equal Protection Clause. We followed that line of reasoning and quoted *Swain* in *State v. King*, 219 Kan. at 511-12, and we followed the same rule in *State v. Taylor*, 225 Kan. at 794-95.

In *Batson*, the Court noted that the lower courts' interpretation of *Swain* has placed a crippling burden of proof upon defendants. The interpretation would require the defendant to investigate the State's peremptory challenges in a number of cases to determine the races of the persons who were excused and the manner in which both parties exercised peremptory challenges; in jurisdictions where the voir dire was not transcribed, it would present an insurmountable burden. To remedy this situation, the Court holds in *Batson* that to establish a prima facie case of purposeful discrimination, the accused need no longer prove the repeated striking of blacks, or other minorities, over a number of cases; a prima facie case of discrimination can be made in the jury selection process in the accused's case. Under the *Batson* rule, to establish a prima facie case of purposeful discrimination:

(1) Defendant needs to show only that he or she is a member of a cognizable group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of that group.

(2) Defendant is entitled to rely upon the fact that peremptory challenges constitute a jury selection process that permits "those to discriminate who are of a mind to discriminate."

(3) Defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race or group. Following *Batson v. Kentucky*, 476 U.S. at 96.

The showing required by paragraph one above is not difficult. If the defendant is black, or belongs to a minority group, and the prosecutor has used peremptory challenges to remove the

member or members of the jury panel of that race or group from the trial jury, the showing required by paragraph one has been made.

The second paragraph merely states a fact upon which the defendant may rely. No evidence need be offered to establish that fact. It is one judicially noticed by the United States Supreme Court.

The third and final paragraph above indicates the defendant may, but is not required to, offer additional evidence. He or she may offer evidence that the prosecutor has similarly stricken black or minority jurors in other cases; such evidence, however, is unnecessary. The *Batson* court indicates in the opinion that a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. The manner in which the prosecutor questions minority veniremen may be considered by the court, particularly if it differs from his or her questioning of non-minority persons. The fact that a prosecutor has, by peremptory challenge, removed all members—or the only member—of the accused's race or minority group from the venire is in itself sufficient to raise an inference of discriminatory purpose. The trial court is then called upon to determine whether a sufficient showing has been made. In this regard the Supreme Court says:

> "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create a prima facie case of discrimination against black jurors." *Batson v. Kentucky*, 476 U.S. at 96-97.

Once the defendant has made a prima facie showing of purposeful discrimination, the burden then shifts to the State to come forward with a neutral explanation for challenging black jurors. The explanation need not rise to the level justifying the exercise of a challenge for cause, but the prosecutor may not rebut a prima facie case of discrimination "by stating merely that he challenged jurors of defendant's race on the assumption—or

his intuitive judgment—that they would be partial to the defendant because of their shared race." Nor may the prosecutor rebut the prima facie case "merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' " *Batson v. Kentucky,* 476 U.S. at 97-98.

Peremptory challenges have in the past been exercised by either party without any stated cause. *Batson* imposes a limitation on the full peremptory character of the historic challenge. A prosecutor who exercises peremptory challenges to remove members of a minority defendant's race from the trial jury must now be prepared to come forward and state on the record a neutral explanation of such challenges. In the case now before us, the prosecutor removed, by peremptory challenge, the only two members of defendant's race on the panel. Defense counsel interposed a timely objection. The trial court noted that in the case of the first juror, the fact that the juror "thinks he remembers Mr. Hood from years gone by and his answer to questions concerning burden of proof [establishes that] there could be no reason to believe that his being stricken was for the purpose of racial stacking." But the court allowed the prosecution an opportunity to address the excuse of the other juror, Mr. Richard. The prosecutor merely stated that she didn't think it necessary to respond, but due to the nature of Mr. Richard's responses in regard to questioning regarding the burden of proof, there was justification for use of a peremptory challenge.

The first juror, Mr. Williams, a long-time resident of Wichita, stated on voir dire, "I think I know the defendant. . . . I think I knew him when he was young; a lot younger. . . . I knew him when he was eight, nine. . . . [B]ut as far as recall of the exact circumstances, I can't." He also responded that his prior knowledge of the defendant would in no way influence his ability to be fair and impartial.

With reference to a juror's knowledge of or acquaintanceship with the accused, it would be difficult in many judicial districts in this state to select a jury panel with members who had no acquaintanceship with the defendant. On the other hand, in the metropolitan districts, it is unlikely that many persons drawn on a jury panel would be acquainted with the accused. What the

practice is with reference to striking jurors on peremptory challenge in Sedgwick County because of their slight or possible acquaintanceship with a defendant, we do not know. That may be a regular practice in the metropolitan areas. We do not find in the record any indication that other jurors were acquainted with the defendant, or what the usual practice of the prosecution in that district is with regard to striking jurors who may know the defendant.

The prosecutor spent some time with the black jurors, Mr. Williams and Mr. Richard, discussing the concept of reasonable doubt. The sum and substance of Mr. Williams' testimony was that he would not require the State to prove the defendant guilty beyond all doubt; he would simply require the State to satisfy him of the defendant's guilt beyond a reasonable doubt. As he expressed it:

"MR. WILLIAMS: Well, if a reasonable doubt existed in my mind, then he would be not guilty.

. . . .

"MR. WILLIAMS: . . . if I didn't have a reasonable doubt, then he would—I would, you know, consider him guilty.

. . . .

"MR. WILLIAMS: Well, if you prove to me beyond a reasonable doubt then it's guilty."

Mr. Richard's responses were similar.

The jury in this case was given an instruction similar to PIK Crim. 2d 52.02. The instruction given read in part as follows:

"If you have no reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant guilty as charged; or if you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty."

That appears to be the position of jurors Richard and Williams in response to lengthy questioning by the prosecutor with reference to reasonable doubt. Other jurors similarly responded that, unless they were personally satisfied that guilt was established by the evidence beyond a reasonable doubt, they would acquit the defendant.

As we noted earlier, this case was tried and the defendant was convicted before the decision in *Batson* was announced. *Batson* requires the trial courts initially to decide if the circumstances

concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. If the court determines that a prima facie case has been made, then the State must articulate its neutral explanation, following which the trial court then will have the duty to determine if the defendant has established purposeful discrimination. Once the prima facie case is made, the burden shifts to the State; if the State does not come forward with a satisfactory neutral explanation for the exercise of its peremptory challenges, the prima facie showing of discrimination stands, and a new jury must be selected.

In the case now before us it appears that the trial court, at the time it gave the State an opportunity to explain its peremptory challenge of Mr. Richard, found that a prima facie showing had been made. We make no determination as to that, or as to whether the reasons apparent upon the record, or known to counsel or the court, for the removal of the only black jurors by the State by peremptory challenge are sufficient to counteract the defendant's showing of purposeful discrimination. We did not see or hear the examination of the jurors. Since the *Batson* opinion had not been handed down, court and counsel were not aware of it, and the prosecutor may well have further "neutral reasons" or further explanation to make to the court with reference to the exercise of the prosecution's peremptory challenges. We therefore hold that the case must be remanded to the trial court for further proceedings in this regard, not for further evidence, but for further argument before the trial court, based upon the trial record and counsel's recollection, as to the propriety of the peremptory challenges exercised by the State. The trial court must then make the determinations required by *Batson*.

For his second issue, defendant contends that the trial court should have declared a mistrial after discovering that one juror was subject to a pending murder charge, instead of accepting the defendant's stipulation to an eleven-person jury over his attorney's objection, and without determining defendant's competency to make such a decision. On the second morning of trial, it was discovered that Mr. Greg Chism, one of the jurors impaneled to try the case, and who sat through the voir dire and first day of testimony, was himself charged with first-degree murder, and

that a preliminary examination for him was scheduled two days later in another division of the Sedgwick County District Court. Counsel and the defendant met in chambers with the judge and discussed the matter. The trial judge stated that there were three alternatives: continue with trial, with Mr. Chism serving as a juror; excuse Mr. Chism, complete the trial with eleven jurors with an admonition that the remaining jurors were not to consider, worry, or talk about why Mr. Chism was excused; or declare a mistrial. Counsel for the State was opposed to continuing with Mr. Chism as a juror. Counsel for the defendant indicated that his personal feeling was that the appropriate remedy would be for the trial court to declare a mistrial. Counsel was not inclined to proceed with just eleven members on the jury, and made that recommendation to his client. The trial court ruled that the decision was that of the accused, not of his counsel, and that the client's decision would control. The trial court then had the following discussion with the defendant:

"THE COURT: All right. Mr. Hood, do you wish to proceed with eleven jurors or do you wish to have a mistrial and have the matter set for—

"THE DEFENDANT: I want to go on with it.

"THE COURT: You want to go on with it?

"THE DEFENDANT: Yeah.

"THE COURT: You want to complete the trial—

"THE DEFENDANT: Yes.

"THE COURT: —with eleven jurors.

"THE DEFENDANT: Yes.

"THE COURT: Okay. All right. And for the record, you have had an opportunity to discuss this with Mr. Britton [defendant's attorney] and he's talked to you about it and he's recommended to you that there be a mistrial.

"THE DEFENDANT: Yes.

"THE COURT: Okay. And he's explained to you that if we were to proceed with eleven jurors and you were to be found guilty of one or more of the charges against you, that in all probability that would not be reversible error since you are electing to go with eleven jurors.

"THE DEFENDANT: Yes.

"THE COURT: Okay. All right."

At that point, the trial court caused Mr. Chism to be called out from the jury room, and the court excused him from further service in the case. A recess was then taken, following which the defendant, counsel, and the trial court convened in chambers. Counsel for the defendant made a motion asking the court to

consider an evaluation of his client's competency, stating that his client was not really listening to his advice on the matter of waiving the right to a twelve-person jury, rights which counsel felt to be extremely substantive and important, and counsel expressed the belief that there might be some problem with the defendant's ability to understand or appreciate the gravity of his predicament. The trial court denied the motion for a competency evaluation, stating in substance that his observation of Mr. Hood in the courtroom had been such that he had no reason to believe that Hood was not competent. A written stipulation was handed to the defendant which read, "We agree upon proceeding with only eleven jurors in this case." The stipulation was signed in open court by Mr. Hood, and by the prosecutor on behalf of the State. The trial court accepted the stipulation, and counsel then reviewed and approved the trial court's proposed instruction to the jury with reference to Mr. Chism's being excused from further service. The jury was called and trial proceeded.

K.S.A. 22-3403(2) reads as follows:

"A jury in a felony case shall consist of twelve members. *However the parties may agree in writing, at any time before the verdict, with the approval of the court, that the jury shall consist of any number less than twelve.*" (Emphasis added.)

The defendant has the right of trial by jury. This is assured to him by sections 5 and 10 of the Bill of Rights of the Kansas Constitution and by the Sixth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment. See *Duncan v. Louisiana*, 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444, *reh. denied* 392 U.S. 947 (1968); *Patton v. United States*, 281 U.S. 276, 74 L. Ed. 854, 50 S. Ct. 253 (1930); *State v. Irving*, 216 Kan. 588, 533 P.2d 1225 (1975); *In re Rolfs, Petitioner*, 30 Kan. 758, 1 Pac. 523 (1883). Those cases also support the rule that a defendant, personally, may waive the right to trial by jury. We find no Kansas case indicating that a defendant alone cannot waive his right to a twelve-member jury, and since the right belongs to the defendant, we conclude that the defendant personally, and not counsel for the defendant, has the right to assent to trial by less than a twelve-person jury. There is nothing in the record to indicate that the defendant did not fully understand his waiver. Though he did not take the

advice of his counsel, the defendant cannot now predicate error on actions taken by him in his own defense. *Bloomer v. State*, 216 Kan. 469, 533 P.2d 278 (1975). Further, there is nothing in the record to indicate that the defendant was incompetent to stand trial or to make the decision to proceed with eleven jurors. We find no error.

Finally, defendant contends that there was not sufficient evidence to support his conviction of aggravated kidnapping. He argues that the movement of the victim from the kitchen to the bedroom was incidental to and inherent in the crime of rape, and thus does not meet the familiar test of the sufficiency of the taking or confinement to constitute aggravated kidnapping set forth in *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976). The rule has been frequently quoted, and we need not set it out in full here. Suffice it to say that the victim in this case was forced into the back bedroom at gunpoint, thrown on the bed face down, covered with pillows, continually threatened, and kept in that position for some 30 minutes while the defendant searched for valuables. She was then raped and tied up. Her restraint began before the robbery and continued throughout the robbery, rape, and escape. Her confinement was not inherent in or incident to the crime of robbery or rape. However, her confinement made both crimes easier to commit, and substantially lessened the risk of detection of the defendant immediately after he left the dwelling. Viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of aggravated kidnapping beyond a reasonable doubt. There is an abundance of competent evidence to support the conviction of aggravated kidnapping.

For the reasons stated earlier, the case is remanded to the District Court of Sedgwick County for further proceedings. If upon hearing the matter, the trial court determines that the prosecutor had a neutral reason for striking the two black jurors by peremptory challenge, no further proceedings are required and the conviction shall stand. If, however, the trial court fails to accept the prosecution's explanation, the court shall set aside the conviction and order a new trial.