No. 51,843

STATE OF KANSAS, *Appellee,* v. GLENDAL A. RIDER, JAMES M. EDENS & CLARK W. LEMONS, III, *Appellants.*

(625 P.2d 425)

Opinion filed March 18, 1981.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause and was on the briefs for the appellant Clark W. Lemons, III.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause, and Andrew E. Busch, of the same firm, was on the brief for the appellant James M. Edens.

*C. Warner Eisenbise,* of Wichita, argued the cause and was on the brief for the appellant Glendal A. Rider.

*Beverly Dempsey,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Glendal A. Rider, James M. Edens, and Clark W. Lemons, III (defendants-appellants) guilty of various felonies. All three appellants were convicted of one count each of felony murder (K.S.A. 21-3401), aggravated robbery (K.S.A. 21-3427), and conspiracy (K.S.A. 21-3302). Rider and Lemons were also convicted of one count each of unlawful possession of a firearm (K.S.A. 21-4204). Edens was convicted of one count of aiding a felon (K.S.A. 21-3812).

Numerous issues are asserted on appeal. All three appellants contend the trial court erred in failing to instruct on self-defense and refusing to instruct on lesser included offenses of murder.

Lemons asserts additional trial court errors in (1) improper handling of the order of cross-examination, (2) admitting hearsay statements of unnamed coconspirators, (3) prejudice resulting from a witness's inadvertent view of a photo exhibit, and (4) improper instructions on the defense of compulsion. Edens asserts additional errors by the trial court in (1) finding sufficient evidence to support the charges on all counts, and (2) giving various jury instructions.

In November and December of 1978 Glendal Rider temporarily resided at Larned State Security Hospital, where he awaited a presentence report. Rider had previously pled guilty in Sedgwick County to charges of burglary, aggravated robbery, theft, unlawful possession of a firearm and two felony murders. Rider made several long distance telephone calls while at Larned. On November 2, and December 1, 1978, Rider made long distance telephone calls to a Wichita telephone number listed for the residence of James Edens. On December 5, Rider escaped from his room at Larned, having sawed through a metal bar on the window. He acquired a red farm truck and fled to Wichita.

At about 7:30 a.m. on December 5, Rider and Edens appeared at the home of John and Carol Leisek, in Wichita. Edens introduced Rider as "W.T." Later that same morning the Leiseks learned Rider's true identity from television news reports of the escape. Rider lived with the Leiseks for the next ten days. Three or four days after Rider's arrival, Carol Leisek dyed his hair from brown to blonde.

On December 15, Edens, Rider, and Clark Lemons had a conversation at the kitchen table in the Leiseks' home. John Leisek testified that he overheard either Lemons or Edens use the words "robbery" and "Hudson Pharmacy." After the conversation, the three men went into the bathroom and shot drugs. Later that afternoon Rider obtained a 1972 yellow Chevrolet Malibu to use in the robbery. Rider obtained the car from a used car lot on the pretense he wanted a test drive. Rider parked the Malibu one block from John Leisek's home.

Shortly after 5 p.m., Rider, Lemons, and Edens again met at the Leisek residence. The robbery was discussed and the men left in Edens' car. Edens drove Rider and Lemons to the place where Rider had parked the Malibu. Rider and Lemons entered the Malibu, drove to within one block of the Hudson Pharmacy, and

parked the car. The two men walked through a nearby yard and entered the pharmacy.

Rider and Lemons brandished handguns, announced the robbery, and demanded money and class A narcotics. During the robbery, which lasted ten to twelve minutes, the phone constantly rang. After obtaining almost $350 and a large box of narcotics, the two men fled.

As they fled, the men re-crossed the yard of a neighboring home. The elderly homeowner, Lewis Merriman, yelled at the trespassers and walked toward them. Rider fired his gun in Merriman's direction. A bullet was later retrieved from the front wall of Merriman's home. The shot was fired as Rider and Lemons were entering the getaway vehicle.

As Rider began to drive away from the curb, another car was passing and the two cars almost collided. The second car, a Cadillac, proceeded up the street the distance of three or four houses, and stopped in the middle of the street. Rider drove his car up the street and passed on the right side of the Cadillac. The driver of the Cadillac, James K. Edwards, lived in a house on the street where this occurred.

According to Rider, the Cadillac pursued the Malibu for several blocks and attempted to run the Malibu off the street. Rider testified that he attempted to "elude" the Cadillac by driving into the parking lot of Corky's IGA. Two witnesses saw the Malibu and Cadillac driving erratically at Corky's IGA. One witness testified the Cadillac slammed on its brakes in front of the Malibu, and that the Malibu backed up and drove around the store. Rider and Lemons testified that they were proceeding down the alley behind Corky's IGA when the Cadillac came up and hard-angled toward the wall. Rider testified that as he got out of his car the driver of the Cadillac reached behind the car seat. Rider fired a warning shot and yelled "freeze." Rider testified that he shot the man because it appeared the man held a gun. Rider and Lemons fled in the Malibu. Apparently Edwards possessed a carpet knife, but no gun. Edwards died as a result of the gunshot wound.

Edens returned to the Leisek residence about 7:30 p.m. Edens and John Leisek drove to a convenience store across the street from the Hudson Pharmacy. Leisek retrieved a piece of paper from the phone booth near the store, tore up the paper, and threw

it away. Edens told Leisek that Rider and Lemons were not at the location where he was supposed to pick them up. Corky's IGA was the planned pick-up location. Edens and Leisek then went to Lemons' home, where they joined Lemons and Rider.

Two days later, on December 17, 1978, Rider was apprehended by Wichita police. Rider was discovered in a vacant field near the city limits. He was in a drugged stupor—disoriented, pale and wet. His knuckles and face were scratched and his hands appeared frostbitten.

After a nine-week trial the jury returned guilty verdicts on all counts. Appeal has been duly perfected.

The two issues common to all three appellants will be explored first. The appellants contend the trial court should have given instructions covering lesser included homicides, and an instruction on self-defense. The appellants rely on an ingenious interpretation of the facts. They argue that the murder of Edwards was unconnected to the aggravated robbery. Because there was no evidence of the reason Edwards gave chase, and the shooting occurred several blocks from the pharmacy, after Rider attempted to "elude" Edwards, the appellants argued the jury could have concluded the murder did not occur during the commission of a felony. Hence, lesser included instructions and a self-defense instruction were requested.

In *State v. Rueckert,* 221 Kan. 727, 731 561 P.2d 850 (1977), this court stated:

"Normally, a trial court is required to give a full range of lesser included offense instructions; however, when a murder is committed during the commission of a felony the rule requiring instructions on lesser included offenses does not apply. (*State v. Reed,* 214 Kan. 562, 520 P.2d 1314; *State v. Masqua,* 210 Kan. 419, 502 P.2d 728, cert. denied, 411 U.S. 951, 36 L.Ed.2d 413, 93 S.Ct. 1939; *State v. Germany,* 173 Kan. 214, 245 P.2d 981.) If a murder is committed during the perpetration of a felony, the felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder. (*State v. Goodseal,* 220 Kan. 487, 553 P.2d 279, *State v. Guebara,* 220 Kan. 520, 553 P.2d 296; *State v. Clark,* 204 Kan. 38, 460 P.2d 586; *People v. Nichols,* 230 N.Y. 221, 129 N.E. 883 [1921].)"

In *State v. Sullivan & Sullivan,* 224 Kan. 110, 121, 578 P.2d 1108 (1978), we stated that the rule in *Rueckert* does not apply when the evidence of the underlying felony is weak or inconclusive.

No self-defense instruction is permitted when the murder occurs during the attempt, commission, or escape from commis-

sion of a forcible felony. K.S.A. 21-3214; *State v. Underwood,* 228 Kan. 294, 305, 615 P.2d 153 (1980); *State v. Purdy,* 228 Kan. 264, 273, 615 P.2d 131 (1980).

In *State v. Hearron,* 228 Kan. 693, Syl. ¶¶ 1, 2, 619 P.2d 1157 (1980), we discussed the established law of this state—that flight from the scene of the crime may be considered as a part of the *res gestae* of the crime. We stated:

"Although K.S.A. 21-3401 does not specifically include, within the felony-murder rule, the killing of another during flight from the scene of the crime, a killing during flight may constitute felony murder." Syl. ¶ 1.

"Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule. Whether the underlying felony had been abandoned or completed prior to the killing so as to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide." Syl. ¶ 2.

We have examined the record and are satisfied the trial court correctly refused to instruct the jury on self-defense and lesser included homicides. The murder occurred during the escape from the commission of a forcible felony—aggravated robbery. The evidence of the aggravated robbery was neither weak nor inconclusive. The evidence proved the appellants conspired to rob the Hudson Pharmacy. The appellants implemented their plan by obtaining the getaway vehicle, arming themselves, and proceeding to the pharmacy. Rider and Lemons parked the car, crossed Lewis Merriman's yard, and entered the pharmacy. After several intense minutes during the actual robbery, the two men fled with the drugs and money. Fearful of pursuit and discovery, Rider shot at Lewis Merriman, the elderly man who yelled as they fled across his yard. Within seconds of firing that shot, Rider and Lemons in the getaway car nearly collided with Edwards' Cadillac. Edwards' home was in the same block as Merriman's home, and there is nothing in the record to indicate whether Edwards did or did not observe Rider and Lemons exit the pharmacy, or shoot at Merriman. We need not establish the reason why Edwards pursued the appellants. The fact is, Edwards pursued the getaway car to Corky's IGA. According to John Leisek, Edens told him that Corky's IGA was the planned rendezvous point. Edwards was fatally shot in the alley behind Corky's IGA.

The murder occurred within the *res gestae* of the aggravated robbery. There was no break in the chain of events. The flight to

Corky's IGA was one continuous transaction following the Hudson Pharmacy robbery. The appellants did not abandon their original criminal activity until after the events behind Corky's. The murder was closely connected to the aggravated robbery, in time—approximately fifteen minutes, place—a few blocks, and continuity of action. The appellants were in the getaway car, armed with the weapons used in the robbery, and in possession of the drugs and money, when the murder occurred.

We believe the evidence was conclusive that the murder occurred during the *res gestae* of the aggravated robbery. Hence, the trial court need not have instructed as it did in Instructions No. 8 and No. 11, that such determination was a fact question for the jury. The pertinent portion of Instruction No. 8 which was unnecessary is:

"If however, you find that the aggravated robbery had terminated and the killing was not within the course of the aggravated robbery but arose independently thereof, only the party who is the cause of the murder is to be held responsible."

Instruction No. 11 was unnecessary. It stated:

"You are instructed that the crime of aggravated robbery continues through the escape from that crime. It is a question of fact for the jury to determine when the escape ended."

We also conclude the giving of those instructions was not prejudicial to the appellants.

Another important issue has been raised as a result of this court's decision in *State v. Underwood,* 228 Kan. 294. There the court ruled that unlawful possession of a firearm was not an inherently dangerous felony, hence, it was not sufficient to form the basis for a felony-murder conviction. All three appellants lodged contemporaneous objections at trial to the use of unlawful possession of a firearm as an underlying felony. Because our decision in *Underwood* was after the trial in this case, the trial court overruled the objections.

We have examined the record, and in particular, the verdict forms and instructions. The jury was instructed that Rider was charged with first-degree murder, a killing "done while in the commission of aggravated robbery or unlawful possession of a firearm, both of which are felonies." In light of what was said in *Underwood,* the disjunctive instruction was erroneous. This much the State concedes. However, the State contends, and we

agree, that the error was harmless and nonprejudicial. K.S.A. 60-2105. In a specific verdict form the jury concluded Rider was "guilty of the offense of aggravated robbery as charged in Count 3." Given that factual finding by the jury, and our conclusion, as a matter of law, that the murder occurred within the *res gestae* of the aggravated robbery, the error is harmless.

Edens and Lemons have no ground for complaint. The jury was instructed that both were charged with felony murder "done while in the commission of aggravated robbery, a felony." No disjunctive instruction was given as to them. Any technical deficiency in the instruction is immaterial given our conclusion as to Rider. In specific separate verdict forms, the jury also concluded both Edens and Lemons were guilty of aggravated robbery and felony murder.

Edens contends the trial court erred in failing to grant a judgment of acquittal on the charge of aiding a felon. Count 1 of the amended information states:

"COMES NOW Paul W. Clark, Assistant District Attorney of the Eighteenth Judicial District of Kansas and for and on behalf of the State of Kansas, gives the court to understand and be informed that in the County of Sedgwick and State of Kansas, and between the 5th day of December, 1978 through the 15th day of December, 1978, one JAMES M. EDENS, did then and there unlawfully, willfully, and knowingly harbor, conceal and aid a person, to-wit: Glendal A. Rider, who had committed felonies, to-wit: burglary, theft, aggravated robbery, unlawful possession of a firearm and two counts of first degree murder, with the intent in the said JAMES M. EDENS that Glendal A. Rider avoid punishment for said felonies."

K.S.A. 21-3812(*a*) provides:

"Aiding a felon is knowingly harboring, concealing or aiding any person who has committed a felony under the laws of this state or another state or the United States with intent that such person shall avoid or escape from arrest, trial, conviction or punishment for such felony."

K.S.A. 21-3812(*a*) restates the traditional common-law crime of accessory after the fact. See K.S.A. 21-106 (Corrick) (repealed, L. 1969, ch. 180, § 21-4701); Vernon's Kansas Crim. C. § 21-3812 (1971), authors' comments. The offense of being an accessory after the fact as defined by K.S.A. 21-106 (Corrick) was a separate and distinct offense from that of the principal offense and the offense of aiding and abetting. *State v. Townsend,* 201 Kan. 122, Syl. ¶ 1, 439 P.2d 70 (1968).

Three conditions were required to render one guilty as an

accessory after the fact, and the same conditions are required to render one guilty of aiding a felon under 21-3812(*a*). The felony must be complete, the accused must have knowledge that the principal committed the felony, and the accused must act with the intent to enable the principal to avoid or escape from arrest, trial, conviction or punishment for the felony. See *State v. Johnson,* 142 Kan. 621, 623, 50 P.2d 975 (1935); *State v. Marr,* 136 Kan. 602, 16 P.2d 469 (1932); 22 C.J.S., Criminal Law § 95-99, p. 273-79; Perkins on Criminal Law, p. 667 (2d ed. 1969); and PIK Crim. 60.13.

In *State v. Johnson,* 142 Kan. at 623, this court addressed the issue of knowledge, and quoted the trial court's instruction, which read:

"In order to render one liable as an accessory after the fact, he must have actual knowledge at the time he assisted the principal, that the latter had committed a felony. Such knowledge must be personal as distinguished from constructive, but if the accused had actual knowledge of facts which would give him good reason to believe the person assisted to be guilty of a felony, this would be sufficient to prove actual knowledge."

The instruction given in *Johnson* is an accurate statement of the law in this state.

Generally, any assistance or relief given to one known to be a felon, in order to hinder his apprehension, trial, or punishment, is sufficient to render the person giving such assistance guilty for aiding a felon. 22 C.J.S., Criminal Law § 99, p. 276.

Edens attacks the sufficiency of the evidence by explaining that there was no direct evidence in the record to prove he knew Rider was a felon, or aided Rider with the intent that Rider should avoid his just fate. Edens complains because the evidence was of a circumstantial nature.

Knowledge and intent are states of mind which may be, and most frequently are, proven by circumstantial evidence. *State v. Blue,* 221 Kan. 185, 190, 558 P.2d 136 (1976). In *State v. White & Stewart,* 225 Kan. 87, Syl. ¶¶ 14, 15, 587 P.2d 1259 (1978), this court discussed the trial court's ruling on a motion for judgment of acquittal, and the appellant's complaint that the jury was permitted "to speculate on circumstantial evidence." We stated:

"A conviction of even the gravest offenses may be sustained by circumstantial evidence.

"The probative values of direct and circumstantial evidence are intrinsically

similar and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each."

A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. *State v. Mack,* 228 Kan. 83, 89, 612 P.2d 158 (1980); *State v. Tillery,* 227 Kan. 342, 345, 606 P.2d 1031 (1980); *State v. Rodriquez,* 226 Kan. 558, 564, 601 P.2d 686 (1979).

The record supports the trial court's conclusion that a finding of guilt beyond a reasonable doubt was supported by the evidence. At the time Rider escaped from Larned State Security Hospital, he was being evaluated for a presentence report. Rider had previously pled guilty to burglary, aggravated robbery, unlawful possession of a firearm, two counts of theft, and two first-degree murders. During his stay at Larned, and before his escape on December 5, 1978, Rider made two long distance telephone calls to a number listed in Edens' name; the calls were made on November 2, 1978, and December 1, 1978. A red truck stolen and used by Rider in his escape was recovered in Wichita only three blocks from Edens' residence. John and Carol Leisek testified they first met Rider on the morning of December 5, 1978. Edens brought Rider to the Leisek's home and introduced Rider as "W.T." Later that day the Leisek's learned of Rider's true identity from television news reports. There were sufficient facts upon which the jury could find Edens had the requisite knowledge and intent to be convicted for aiding a felon.

Edens contends the trial court erred in failing to sustain motions for judgment of acquittal on the charges of conspiracy, aggravated robbery and felony murder. One of appellant Lemons' issues overlaps at this point, and deserves attention. Lemons contends the trial court erred in admitting the portion of John Leisek's testimony which was offered to prove the element of agreement concerning the conspiracy. Leisek testified that in the afternoon of December 15, 1978, he overheard a conversation between Rider, Lemons and Edens. The conversation occurred at the kitchen table in Leisek's home. Leisek heard the words "robbery," "Friday," and "Hudson Pharmacy." Leisek could not identify which of the three appellants uttered these words.

Lemons specifically complains that Leisek's testimony was

only admissible under the vicarious admissions hearsay exception (K.S.A. 60-460[*i*]), and that admission was improper because the specific hearsay declarant could not be identified. Lemons cites no authority for the latter contention.

In *State v. Roberts*, 223 Kan. 49, 60, 574 P.2d 164 (1977), this court stated:

"Appellants have misinterpreted the statute and its case law. K.S.A. 60-460(*i*) addresses a third party situation. Its requirements apply when the party (defendant) and the declarant (coconspirator) are participating in a plan to commit a crime and a third person (witness) is later called to testify as to the coconspirator's statements made outside the presence of the defendant concerning the conspiracy for the purpose of establishing defendant's participation in the conspiracy and crime. As previously pointed out the theory of admissibility is that each party to the conspiracy becomes an agent for the others. Therefore as an agent his statements to a third person bind not only himself but the others for whom he is acting. Under this theory of admissibility the conspiracy out of which the agency arises must be proven before the third party may testify against a coconspirator as to the declarant's statements made in the absence of the defendant-coconspirator.

"This is not such a case. The statements here were made in the presence of all conspirators. The statements were not made to a third party. A conspiracy is an agreement with another person to commit a crime or to assist in the same. The statements of persons present when the conspiracy is being consummated are admissible as matters accompanying an incident to the transaction or event; as such they are part of the *res gestae*. Such statements by which the agreement was reached may be established by the testimony of anyone present when the agreement was alleged to have been entered into. The testimony of Cindy Fanning was admissible to prove the conspiracy."

Accord, *State v. Moody*, 223 Kan. 699, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978).

Here, the statements by which the agreement was reached were established by someone who was present at the time—John Leisek. All three appellants were present when the statements were made. Unsworn declarations received as part of the *res gestae* do not depend for their effect on the credibility of the declarant, but derive probative force from their close connection with the occurrence which they accompany and tend to explain. They are admissible as original evidence, although it is frequently stated that they are received as an exception to the hearsay rule. 31A C.J.S., Evidence § 403(1), p. 981-82. Under the circumstances, where all three possible declarants are alleged to be conspirators, and were present with each other, it was not error to admit Leisek's testimony.

*State v. Roberts*, 223 Kan. at 52, contains a nutshell summary of

the proof required to sustain a conviction on the conspiracy charge, as follows:

"Our conspiracy statute provides:

" 'A conspiracy is an agreement with another person to commit a crime or to assist to commit a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by him or by a co-conspirator.' (K.S.A. 21-3302[1].)

"In *State v. Daugherty*, 221 Kan. 612, 562 P.2d 42, this court holds:

" 'Conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy.' (Syl. 4.)

"To prove a conspiracy it must be established that the conspirators had a mutual understanding or tacit agreement, a meeting of the minds, for the accomplishment of the common purpose. This meeting of the minds may be expressed or implied from the acts of the parties. (15A C.J.S., Conspiracy, § 40, pp. 734-735.) However a conspiracy to commit a crime is not established by mere association or knowledge of acts of the other parties. There must be some intentional participation in the conspiracy with a view to the furtherance of the common design and purpose. (15A C.J.S., Conspiracy, § 39, pp. 733-734.)

The trial court properly ruled there was sufficient evidence to overrule the motion for judgment of acquittal as to Edens on the charges of conspiracy, aggravated robbery, and felony murder. John Leisek's testimony established a basis for the jury to reasonably conclude that Edens, Rider, and Lemons had a mutual understanding or tacit agreement for the accomplishment of the Hudson Pharmacy robbery. Soon after the kitchen table conversation, the three appellants shot drugs together in the bathroom of Leisek's home, impliedly sealing their pact. There was also competent evidence that Edens intentionally participated in the conspiracy to further the success of the robbery. Edens drove Rider and Lemons around the block to where Rider had parked the robbery vehicle. There were sufficient facts upon which the jury could conclude Edens telephoned the pharmacy and kept the phone ringing during the robbery, and attempted to pick up Rider and Lemons after the robbery.

The overt acts of Edens were sufficient to establish a factual foundation that he was an aider and abettor to aggravated robbery and felony murder. The jury could reasonably conclude Edens willfully participated as an aider and abettor to further the success of the robbery, thus supporting his conviction as a principal for the offense of aggravated robbery and felony murder.

In Edens' issue No. 3, he complains of Instruction No. 8, which states:

"When a conspiracy is entered into to do an unlawful act, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their co-conspirators until the object for which the conspiracy was entered into is fully accomplished. This responsibility is not confined to the accomplishment of the common design for which the conspiracy was entered into, but it extends to and includes collateral acts incident to and growing out of the common design if it was reasonably foreseeable.

"If, however, you find that the aggravated robbery had terminated and the killing was not within the course of the aggravated robbery but arose independently thereof, only the party who is the cause of the murder is to be held responsible."

Edens contends the instruction is erroneous because it permits the jury to use conspiracy as the underlying felony for the felony-murder conviction. We stated earlier in this opinion that the second paragraph of Instruction No. 8 was erroneous, but not prejudicial.

As previously stated the jury was instructed that Edens was charged with felony murder "done while in the commission of aggravated robbery, a felony." In specific separate verdict forms, the jury concluded Edens was guilty of aggravated robbery and felony murder. Hence, the erroneous nature of Instruction No. 8 was not prejudicial to Edens and does not constitute reversible error.

Edens also attacks the trial court's instruction on aiding and abetting. The trial court instructed in No. 21, in pertinent part, as follows:

"You are, therefore, instructed in this case that if you find beyond a reasonable doubt that the defendant, James M. Edens or Clark W. Lemons, III, *conspired,* counseled, aided, abetted or advised or in any manner assisted others in the commission of the crime or crimes . . . ." (Emphasis added.)

The trial court erroneously mixed conspiracy with aiding and abetting. In *State v. Campbell,* 217 Kan. 756, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975), we stated that conspiracy is not synonymous with aiding and abetting. However, the error is not of reversible magnitude. The jury was properly advised as to the law on aiding and abetting in the commission of crime. The evidence clearly supports the conclusion of the jury that Edens was guilty of conspiracy, aggravated robbery and felony murder as charged.

Lemons contends the trial court abused its discretion in han-

dling the order of proof during trial. Lemons complains because the trial court permitted certain witnesses to be recalled more than once, and cross-examination of some witnesses was suspended while other witnesses testified. Specifically, Lemons complains about the order in which John and Carol Leisek were permitted to testify.

There should always be an orderly presentation of proof. Rules pertaining thereto, however, are directory and not mandatory. An alteration in the prescribed customary order of proof rests in the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless its exercise of the power of discretion is abused. *State v. Neff,* 169 Kan. 116, 124, 218 P.2d 248, *cert. denied* 340 U.S. 866 (1950); *State v. Phippen,* 207 Kan. 224, 231, 485 P.2d 336 (1971).

This is especially true when the prosecution is for the crime of conspiracy. Proof of a conspiracy may depend on circumstantial evidence—a vast number of isolated and independent facts. The court stated in *State v. Borserine,* 184 Kan. 405, 411, 337 P.2d 697 (1959), that:

"The order of proof in such case is largely controlled by the trial judge; and where the crime has to be established by circumstantial evidence the prosecutor must be given permission to present that proof bit by bit as best he can without too rigid enforcement of the rule. If upon completion of the State's case, all the facts tend to show a conspiracy, the order of proof in which the acts of the conspirators are shown is not of much importance."

Lemons contends the trial court erred in refusing to declare a mistrial after a witness viewed a photographic exhibit of Rider inadvertently left on the witness chair during trial. The witness had been recalled by the State in order to identify Rider.

This issue has no merit. No prejudice resulted from this inadvertent error. The witness who viewed the photo was called to identify Rider as a person he saw on December 5, 1978, near Larned, Kansas, in a red truck. The identification was offered to prove Rider's actions immediately after his escape from Larned, and had no direct effect on Lemons' conviction for conspiracy, aggravated robbery, and felony murder. Declaration of a mistrial is a matter entrusted to the trial court's discretion. K.S.A. 22-3423. In addition, technical errors and irregularities which do not prejudicially affect the substantial rights of the complaining party are to be disregarded on appeal. K.S.A. 60-2105; *State v. Ambler,* 220 Kan. 560, 563, 552 P.2d 896 (1976).

Finally, Lemons contends the trial court erred in its instruction on the defense of compulsion. The trial court gave the jury the compulsion instruction found in PIK Crim. 54.13. Lemons contends the instruction is violative of his 14th Amendment due process rights because it is vague and conflicts with K.S.A. 21-3201(1).

The record indicates Lemons first met Rider, after the latter's escape, on December 9, 1978, when Carol Leisek took Rider to Lemons' home. Lemons was acquainted with Rider from a 1977 meeting. Lemons and Rider testified that on December 15, the day of the robbery, Rider first mentioned his plan to rob the pharmacy, and Edens and Lemons refused to help. Rider then displayed a gun which was positioned in his belt, and told Lemons to empty his pockets. Lemons and Rider testified that no verbal threats were made, nor was the gun pointed at Lemons. Lemons testified he was afraid of Rider because he knew Rider had killed two men. Lemons stated that he accompanied Rider because of this fear, that the gun he used in the robbery was unloaded, and that he had not wanted to participate in the robbery.

There was also evidence that during the afternoon of December 15, Lemons attempted to obtain a car for Rider's use. A used car salesman identified Lemons as a man who was refused permission to test-drive a car. After Lemons' unsuccessful attempt, he drove Rider to within a block of another used car lot where Rider obtained the robbery getaway car. Rider testified he wanted the car in order to leave Wichita. He testified Lemons did not want to steal a car; Lemons insisted Rider would have to take the car from him.

In *State v. Huffman,* 228 Kan. 186, Syl. ¶¶ 1, 5, 612 P.2d 630 (1980), we discussed this court's responsibility when a statute is challenged as being unconstitutionally vague, stating:

"This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done.

"The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that

persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process."

K.S.A. 21-3209 and PIK Crim. 54.13 have not previously been challenged in this court as being unconstitutionally vague. 21-3209 provides:

"(1) A person is not guilty of a crime other than murder or voluntary manslaughter by reason of conduct which he performs under the compulsion or threat of the imminent infliction of death or great bodily harm, if he reasonably believes that death or great bodily harm will be inflicted upon him or upon his spouse, parent, child, brother or sister if he does not perform such conduct.

"(2) The defense provided by this section is not available to one who willfully or wantonly places himself in a situation in which it is probable that he will be subjected to compulsion or threat."

The instruction given by the trial court is almost identical to PIK Crim. 54.13, and reads:

"NO. 29

"It is a defense to the charges made against the defendant, Clark W. Lemons, III, if he acted under the compulsion or threat of immediate infliction of death or great bodily harm, and he reasonably believed that death or great bodily harm would have been inflicted upon him had he not acted as he did.

"Such a defense is not available to one who willfully or wantonly placed himself in a situation in which it was probable that he would have been subjected to compulsion or threat."

The Judicial Council comment following 21-3209 states that "[s]ubsection (2) creates an exception for the person who connects himself with criminal activities or is otherwise indifferent to known risk." The comment also identifies the Model Penal Code, § 2.09(2) as the source of that subsection of the Kansas statute.

Lemons cites no legal authority for his position that the statute is vague, and we have found none. In his brief he cites two examples of possible "situations" which might be encompassed within the statute's meaning. Both "situations" described by the appellant are unreasonable and farfetched interpretations of the statute's possible application. In *State v. Milum*, 213 Kan. 581, 582, 516 P.2d 984 (1973), this court quoted 21 Am. Jur. 2d, Criminal Law § 100, as follows: "The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm." We are satisfied the statute is not vague, but conveys a sufficiently definite meaning as to the

conduct proscribed when measured by common understanding and practice.

Other points asserted by Lemons have been reviewed but are found to have no merit.

The judgment of the lower court is affirmed.