IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
DECEMBER SESSION, 1997

FILED

September 10, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )      No. 03C01-9703-CR-00117
       Appellee              )
                             )      SULLIVAN COUNTY
vs.                          )
                             )      Hon. R. Jerry Beck, Judge
LON MITCHELL PIERCE, JR.,    )
                             )      (Felony Murder; Theft over
       Appellant             )      $10,000; misdemeanor theft;
                             )      evading arrest)

_____          **DISSENTING OPINION**

        The majority concludes that the appellant's conviction for felony murder was

committed during the perpetration of a theft.  I am unable to join in this conclusion

as I find that neither the law of this State nor the facts of this case support such

interpretation.  The majority reasons that, because the appellant was "exercising

control over stolen property" when the homicide occurred, the homicide was

committed in the perpetration of the felony.

        As I read the opinion, because theft (exercising control) is a continuing

offense, the offense continues as one criminal transaction as long as the perpetrator

remains in possession of the stolen property.  Accordingly, under majority rationale,

if death, at any point, results from the operation of the stolen vehicle, felony murder

prosecution would attach.  The question of whether a crime is one of a continuing

nature, as opposed to whether a crime is committed during the perpetration of a

felony, poses two entirely separate questions.  Here the majority merges the two.  I

agree with the majority that, in this case, theft is a continuing offense for the purpose

of establishing jurisdiction. However, I disagree that this fact, *per se,* permits

application of the felony murder rule.  See, e.g., Doane v. Commonwealth, 237

S.E.2d 797, 798 (Va. 1977) (refusing to apply theft as a continuing offense for

purposes of the felony murder rule).

Moreover, the majority's acknowledgment of previous appellate rulings of this state which require the underlying felony to have been committed in pursuance of the unlawful act and not collateral to it is belied by their reasoning that, as long as the underlying felony is of a continuing nature, felony murder prosecution is warranted. This precise issue was confronted in the case of State v. Gilliam, which is virtually identical to the case before us. State v. Gilliam, No. 03C01-9109-CR-00287 (Tenn. Crim. App. at Knoxville, Apr. 20, 1992), perm. to appeal denied, (Tenn. Sept. 21, 1992). In Gilliam, the defendant stole a vehicle from a car lot and eighteen days later in an adjoining county, while being pursued by the police, killed three people in a head-on collision. Gilliam, No. 03C01-9109-CR-00287. This court, in reversing the defendant's conviction for first degree felony murder, held that the "defendant's operation of the vehicle on the date of the crash was a collateral act, merely incidental, bearing no intimate relationship with the underlying felony. We find no unity of time, place or purpose between the theft and the ultimate deaths of the three young victims." Gilliam, No. 03C01-9109-CR-00287. In the instant case, the appellant had been in possession of the stolen vehicle for twenty-one days when the homicide occurred and was approximately eight hundred miles from the situs of the theft. The appellant and his companions had been residing in Bristol, Virginia, for approximately twenty days. Consistent with the holding in Gilliam, I find, under these facts, that the homicide in the case before us bore no intimate relationship to the theft. See, e.g., Doane 237 S.E.2d at 798 (homicide not committed in perpetration of underlying theft where defendant had stolen vehicle previous day, 280 miles away).

The majority attempts to distinguish Gilliam from the instant case by finding that Gilliam was charged with theft by taking, while the appellant in this case was charged with theft by exercising control. It is inescapable, however, that every

2

defendant who commits a theft will, at some point, exercise control over stolen property. The facts remain that both were charged with theft, both were exercising control over stolen vehicles, both were being pursued for traffic violations and both were attempting to avoid apprehension by the police before the collisions and resulting deaths occurred. Ironically, under majority rationale, the thief who actually steals the car is not subject to felony murder prosecution while the arguably less culpable person, the receiver of the stolen property, is subject to punishment of death by electrocution. Moreover, under the majority's application of a "continuing offense" theory, a defendant in possession of a stolen vehicle ten, twenty or thirty years after the date of taking, who hits a pedestrian while operating the stolen vehicle resulting in the pedestrian's death, would remain criminally liable under the felony murder rule. The principles applied in Gilliam were intended to prevent such strained results. These principles are neither new nor novel to the jurisprudence of this state. Our courts have held that, in order to fall within the provisions of the felony murder statute, the homicide must have been committed "in pursuance of the unlawful act, and not collateral to it." State v. Farmer, 296 S.W.2d 879, 883 (Tenn. 1956). "The killing must have had an intimate relation and close connection with the felony and not be separate, distinct, and independent from it." Id. (citing *Wharton on Homicide*, § 126). In other words, a homicide is committed during the perpetration of a felony if the homicide is committed within the *res gestae* of the felony. See Smith v. State, 354 S.W.2d 450, 452 (Tenn. 1961). Within the context of the felony murder rule, the *res gestae* requires that the felony and homicide be part of a continuous transaction, that the homicide be incident to the felony, or that there be no break in the chain of events between the felony and the homicide. See generally Erwin S. Barbre, Annotation, *What Constitutes Termination of Felony for Purpose of Felony-Murder Rule*, 58 A.L.R.3d 851, 856, 865-874 (1974). The *res gestae* embraces not only the actual facts of the transaction and the circumstances surrounding it, but also the matters immediately antecedent to the transaction and having a direct causal connection with it, as well as acts immediately following it and

3

so closely connected as to form in reality a part of the occurrence.  Payne v. State, 406 P.2d 922, 925 (Nev. 1965).  Thus, the *res gestae* of the crime begins at the point where an indictable attempt is reached, and ends where the chain of events between the initial crime and the homicide is broken.  See Parker v. State, 570 So.2d 1048, 1051 (Fla. Dist. Ct. App. 1 1990);  State v. Rider, 625 P.2d 425, 430-431 (Kan. 1981); Payne, 406 P.2d at 924; Commonwealth v. Kelly, 10 A.2d 431, 433 (Pa. 1940).

The defendant's actions must be one continuous integrated attempt to successfully complete his crime and escape.  Factors to be considered in determining whether there has been a break in the chain of circumstances include the relationship between the underlying felony and the homicide in point of time, place, and causal relationship.  Farmer, 296 S.W.2d at 883.  In the case of flight, an important consideration is whether the fleeing felon has reached a place of temporary safety.  See  People v. Ford, 416 P.2d 132, 141 (Cal. 1966), cert. denied, 385 U.S. 1018, 87 S.Ct. 737 (1967), overruled in part by, People v. Satchell, 489 P.2d 1361 (Cal. 1971);  People v. Boss, 290 P. 881, 883 (Cal. 1930); Parker, 570 So.2d at 1051 (citing LaFave, *Substantive Criminal Law* § 7.5 (1986));  Lampkin v. State, 808 P.2d 694, 696  (Okla. Crim. App. 1991).  If these factors, considered in light of the circumstances of the particular incident, reveal a definite break in the chain of events, eliminating the possibility of one continuous transaction from the initial attempt of the underlying felony to the homicide, then the felony murder rule cannot be applied.

I am unable to find any jurisdiction in these United States which would support a conviction for felony murder under the facts of this case.  A number of jurisdictions have adopted a "safe haven" approach in determining whether the particular facts of the case are sufficient to establish a break in the chain of events from the underlying felony to the subsequent homicide.  Although the majority

4

alluded to this contemporary approach, no analysis was performed as, obviously, under a "continuing offense" theory, there would never be a place of temporary safety.

In sum, our task in this appeal is to construe what the legislature intended by the phrase "in the perpetration of." The standard applied by the majority is, in effect, no standard and provides no workable principle for future cases. As previously stated, I believe this decision overrules existing case law which had previously defined the boundaries of the phrase "in the perpetration of." Moreover, the majority's opinion removes the rationale behind the legal boundaries and ignores the objectives of the legal fiction of felony-murder. This concept of vicarious liability deserves no extension beyond its required application.

While I have concluded that the felony murder rule was misapplied in this case, this does not mean that the appellant's unlawful conduct should be excused. It only means that the appellant's guilt should be established upon an offense for which culpability exists, not upon the overextension of an artificial concept. For the above reasons, the appellant's conviction for felony murder should be reversed and this cause should be remanded for trial on all lesser included homicide offenses of second degree murder, criminally negligent homicide, vehicular homicide and reckless homicide.

_____
DAVID G. HAYES, Judge